## Potter et ux. v. Consolidation Coal Co. et al.

Nov. 22, 1938.

NAPIER & NAPIER for appellants.

ED C. O'REAR, J. E. CHILDERS and HARRY L. MOORE for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Melvin Potter and Angeline Potter, his wife, brought this action against the Consolidation Coal Company, T. W. English, its general manager, and Ben Purser, its superintendent, to recover damages in the sum of $25,000, alleged to have been caused by the negligent

operation of the coal mine owned by the Consolidation Coal Company and located near plaintiffs' property.

Melvin Potter owned about 1¼ acres of land on Cane Branch, a tributary of Elkhorn Creek in Letcher county. On the land is located his residence and some small outhouses. The Consolidation Coal Company owns land on both sides of Cane Branch above and below the Potter residence, which is located about 300 yards from the corporate limits of the city of Jenkins. It was alleged in the petition that the defendant company carelessly and negligently operated its coal mine near plaintiffs' residence and premises so as to cause noxious and poisonous gases to issue from its mine in large quantities and to cover their premises, and enter their dwelling house. It was further alleged that their residence had been rendered uninhabitable, and the salable value of their property destroyed. The answer was in three paragraphs. The first paragraph was a traverse, the second paragraph was a plea of limitations, and the third paragraph pleaded a judgment of the District Court of the United States for the District of Maryland in bar of the action. In re Consolidation Coal Co., 11 F. Supp. 594. A reply and an order controverting of record the affirmative allegations of the reply completed the issues. At the conclusion of the plaintiffs' evidence, the court sustained the defendants' motion for a directed verdict in their favor, and a judgment was entered dismissing the plaintiffs' petition. The propriety of this ruling is the question presented for determination on this appeal.

The issues made by the pleadings were: (1) Whether the defendant Consolidation Coal Company, a Delaware corporation, had negligently operated its mine so as to pollute with noxious and poisonous gases the atmosphere about plaintiffs' property and thereby injure or destroy its value; and (2) whether that issue had not been adjudged adversely to plaintiffs in the United States District Court for Maryland in proceedings in that court involving the receivership of the Consolidation Coal Company, a Maryland corporation, the defendant company's predecessor in title.

A fire originated in the coal mine adjacent to the Potter property in December, 1930, and has burned continuously since then. Its origin is unknown. It is

not claimed that it originated through any negligence of the appellee Consolidation Coal Company or its predecessor in title. In fact, the appellee became the owner of the property in November, 1935, nearly five years after the fire started. During the period of more than five years between the origin of the fire and the trial of this action, the appellee and its predecessor spent nearly $80,000 fighting the fire which covered an underground area of nearly 40 acres. Every known method was employed in an effort to extinguish and localize it. They tried to remove the burning coal, but the fire spread faster than the burning material could be carried out. They next tried to smother it by sealing with concrete all cracks and openings in the surface, but the constant settling and cracking of the surface over the worked out portion of the mine rendered these efforts abortive, although a large force of men was kept continually at work. Water was pumped into the mine from Elkhorn creek at the rate of 3,300 gallons a minute for two or three months, but it escaped through crevices in the mountain side before it rose high enough to extinguish the fire.

In November, 1935, soon after it acquired the mining properties of the old company, the appellee Consolidation Coal Company called into consultation representatives of the Federal Bureau of Mines and the Kentucky State Department of Mines, and also mining engineers who were experienced in fighting mine fires, for the purpose of devising a plan for extinguishing or localizing the fire. The plan recommended by the experts consulted was the construction of what is described in the record as an "air lock." That part of the mine which had been worked out and from which all the minable coal had been removed except the pillars was connected with a large unmined area by a narrow neck of coal. In order to seal off the unmined coal from the fire in the old mine and to prevent the fire from spreading, the air lock was constructed in the narrow neck of coal connecting the burning area with the unmined area. An opening was made in the mountain about 500 yards from the Potter home. After the entry had been driven into the side of the mountain a short distance, an airtight door was placed at the mouth of the entry. Another airtight door was constructed in the entry a short distance from the door at the mouth of the entry. The

entry was driven 150 feet into the mountain, and a wall of noncombustible material was constructed. The purpose of this wall was to confine the fire to the old mine and prevent its spreading to the unmined area. Appellants claim that noxious gases escaped through this air lock and caused the damages of which they complain.

The evidence shows, and appellants concede, that noxious gases, such as sulphur dioxide and carbon monoxide, escaped from the burning mine long before the air lock was constructed but they attempted to show that more gases escaped after its construction. It is their theory that the driving of the entry into the mountain by the appellees, after the Consolidation Coal Company became the owner of the property, permitted gases to escape and damage their property. Appellants introduced as witnesses employees of the coal company who superintended the construction of the air lock. According to their testimony, an airtight door was built in the side of the mountain before the mine was penetrated and a second airtight door into the mine proper was built. Workmen could thus get into the mine without letting gases escape. They testified that it was a physical impossibility for the gases inside the mine to escape through the air lock. There is no evidence that the airtight doors were ever left open. The appellant Melvin Potter admitted that gases had been escaping from the burning mine for several years before the air lock was constructed and that he had noticed the gas fumes about his premises, but he stated that these fumes increased after the air lock was constructed, and he expressed the opinion that these fumes came from the air lock.

The record discloses that appellant Melvin Potter, in August, 1934, filed a verified claim in the U. S. District Court for Maryland in a proceeding in which the business of the Consolidation Coal Company of Maryland was being liquidated. In this claim he alleged that he and his wife had been damaged in the sum of $25,000 by poisonous gases and noxious fumes from the company's mines, and that these damages occurred during the years 1932, 1933, and 1934. The claim was referred to the commissioner of the District Court for the purpose of taking proof as to the liability of the company for the damages claimed by the Potters. Proof was heard and a judgment was rendered by the United States District Court dismising the claim. This judg-

ment was an adjudication as to all alleged damages that occurred prior to August, 1934, and the only ground upon which appellants can recover damages from the present owner of the property is some act of negligence on its part which has permitted or caused noxious gases to escape from the burning mine which has damaged appellants' property. The proof wholly fails to show such negligence. Even if it be conceded that noxious gases have increased about appellants' premises since the appellee became the owner of the property, it does not follow that this resulted from any negligence on its part. It is shown that the surface over the worked out mine is constantly settling and cracking, and that fumes are escaping through these newly made crevices. It is apparent therefore that the amount of fumes escaping from the mine varies from time to time. It is practically conceded that the Consolidation Coal Company has adopted every known method for preventing the escape of the noxious gases. The case simply narrows down to the question: Did it negligently construct the air lock and permit additional gases to escape from the mine? The burden was on the appellants to show such negligence, and a careful reading of the record fails to disclose any evidence of probative value tending to show that the air lock was negligently constructed or maintained or that any gases have escaped through it.

Appellants' claim is based on pure surmise and speculation. The proof introduced by them established the absence of negligence on the part of appellees in the construction and maintenance of the air lock. The plan adopted was recommended by the best known experts in the United States, and, according to witnesses who assisted in the construction of the air lock and inspected it after its construction no gases or fumes from the burning mine escaped through it. Neither the appellants nor any of their witnesses had been in or near the air lock. Melvin Potter expressed the opinion that gases and fumes came from the air lock, but when he was asked how he could tell from what opening they came he said: "I just had an idea. You can about tell when it hits you." New crevices were constantly appearing in the mountain side as the surface settled, some of them near the air lock, and obviously it would be impossible at a distance of several hundred yards to determine from what opening the fumes were escaping.

If the case had been submitted to the jury under the evidence produced the question of liability would have been merely a matter of guesswork. From the evidence the jury could not infer that the alleged damages to appellants' property resulted from any negligence on the part of appellees; it could only suppose it so resulted. A finding of the jury in favor of the appellants would have been a mere conjecture unsupported by the proof. As was said in Johnson v. Mobile & O. R. Co., 178 Ky. 108, 198 S. W. 538, 541:

"A well recognized and established principle which applies to the law of negligence is that negligence is never presumed. Contributory negligence is never presumed. Negligence must be proven directly or such facts must be proven as that negligence must be necessarily inferred from the existence of the facts proven. It must be shown that the act of negligence was also the proximate cause of the injury. Negligence cannot be assumed nor inferred from the mere fact that an injury was sustained. When the injury is proven, negligence may be inferred from the facts and circumstances which surround it, if it can be reasonably inferred from them that the negligence caused the injury. Where the evidence is equally consistent with the existence of negligence as the proximate cause of the injury and its nonexistence, the plaintiff has failed in his case. If the evidence shows that the injury may have resulted from one of several causes, but only one of these causes can be attributed to the defendant's negligence, the plaintiff has failed in his case, for the reasons above assigned."

In Gregory's Adm'x v. Director General, 195 Ky. 289, 242 S. W. 373, the following was quoted from the opinion in Weidekamp's Adm'x v. Louisville & Nashville Railroad Company, 159 Ky. 674, 167 S. W. 882:

" 'Neither courts nor juries are authorized to indulge in speculation or guesswork as to the cause of accidents; there must be some tangible evidence from which it may be fairly said what brought about the accident. It has long been the rule in this state that no recovery can be had in such cases where the evidence is so unsatisfactory as to require surmise or speculation as to how the injury

occurred, and that there will be no presumption of negligence.' "   [Page 376.]

Applying the foregoing rule to the facts of this case, it follows that the circuit court properly sustained appellees' motion for a directed verdict in their favor, and the judgment is affirmed.