V. E. HARLESS *et al.*

*v.*

EARL WORKMAN *et al.*

(No. 12010)

Submitted May 10, 1960.        Decided June 7, 1960.

*J. Howard Hundley*, for plaintiffs in error.

*Shaffer & Shaffer, H. G. Shaffer, H. G. Shaffer, Jr., Donald E. Jarrell*, for defendants in error.

CALHOUN, JUDGE:

On June 28, 1957, V. E. Harless and Kathleen Harless, husband and wife, instituted this action of trespass on the case in the Circuit Court of Boone County against Earl Workman, Edward Toney and Henry Buster Radcliff. At the conclusion of the plaintiffs' testimony in chief, the court directed a verdict in favor of defendants Toney and Radcliff. Trial of the case continued thereafter against Earl Workman as sole defendant, resulting in a jury verdict for the defendant, upon which verdict the court entered judgment on September 11, 1959. A writ of error to such judgment was awarded by this Court, and subsequently the plaintiffs were granted leave to make a motion to reverse the judgment of the trial court.

The declaration, as amended, alleges that in April, 1941, plaintiffs became the owners of certain lots of real estate and the dwelling previously erected thereon in Glenview Subdivision of the Town of Racine, in Sherman District of Boone County; that thereafter in 1946 defendants Toney and Radcliff purchased a tract or parcel of real estate located about 150 feet from the plaintiffs' property and separated therefrom by a road and by railroad tracks; that thereafter Toney and Radcliff erected on their tract or parcel of real estate a ramp or tipple and other necessary equipment for the purpose of loading coal into coal cars on the adjacent railroad tracks; that coal was thereafter dumped into such tipple from trucks and thereby conveyed to the railroad cars; that thereafter, about the year 1952, defendants Toney and Radcliff by oral agreement leased such coal loading facilities to defendant Workman; that thereafter Workman added a coal crushing machine, which was used and operated along with the tipple and other coal loading equipment until the time this action was instituted; that

as a result of such coal crushing and loading activities, "fumes, coal dust, soot, impurities and other particulate matter and atmospheric contaminants, so produced and created, are negligently permitted and allowed to escape and to be discharged and dispersed into the air and are thereupon *air borne* and cast upon the properties both real and personal of the plaintiffs;" and "the defendants have negligently and unlawfully by reason of said operation created and produced and maintained a nuisance adjacent to plaintiffs' property in that they have by reason of said operation created, produced and permitted to escape from their said plant and their property large quantities of particulate matter, fumes, dust, very fine coal dust, smoke, soot and other impurities and atmospheric contaminents, which are *air borne* and carried by the wind to and through the dwelling house of the plaintiffs and deposited upon all their property, and by reason thereof said substances so created and permitted to escape by the defendants as aforesaid and airborne, circulates through plaintiffs' dwelling and settles upon their rugs, furniture, draperies, floors, walls, exterior walls, porches, clothing, roofs, food, fixtures, and apliances greatly damaging all the real estate and personal property owned by the plaintiffs and has so damaged their said personal property to such an extent that it is practically worthless and destroyed, and thereby plaintiffs have been forced to expend large sums of money to keep their dwelling habitable and to get rid of the said airborne matters by constantly washing, sweeping and cleaning the same from the premises and property of the said plaintiffs and also by reason thereof plaintiffs have suffered great mental anguish and discomfort and peace of mind and their health has been seriously affected and impaired.

It is the contention of the plaintiffs that the pleadings and proof disclose that the coal loading and coal crushing facilities, as used and operated by the defendants, resulted in a nuisance, and that the defend-

ants should be held liable to the plaintiffs, irrespective of negligence or due care, for damage thereby caused to the plaintiffs' property.

Defendant Workman, on the other hand, contends that the coal loading and coal crushing equipment and facilities, as operated by the defendants, did not amount to a nuisance and, therefore, that there can be no liability on the part of the defendants, or any of them, in the absence of negligence. The trial court submitted the case to the jury on the basis of negligence and due care, rather than upon the basis of a nuisance. This action of the trial court in thus submitting the case to the jury is basic in all assignments of error made in this Court, and in all assignments of error urged in the trial court in support of the motion to set aside the verdict and grant the plaintiffs a new trial.

Photographs taken on May 8, 1957, introduced as exhibits before the jury on behalf of plaintiffs, portray portions of both the interior and the exterior of plaintiffs' dwelling. Such photographs disclose that which has the appearance of considerable accumulations of dark colored dust. Plaintiffs and numerous other witnesses called in their behalf testified that coal dust from the defendants' loading facilities covered the exterior of the plaintiffs' dwelling, including porches, and that such dust also found its way into the interior of the dwelling, covering furniture, dishes and other items of personal property therein. Such testimony indicated further that coal dust settled in a similar manner upon the plaintiffs' lawn and garden. Without undertaking to state the evidence in detail, it may be said that the testimony of plaintiffs and their witnesses detailed an annoyance from coal dust in a manner and to a degree sufficient to render life to the plaintiffs in their home quite unpleasant. It has been pointed out by defense counsel that among the eighteen witnesses who testified in behalf of the plaintiffs, all, in addition to the two plaintiffs, were relatives of plaintiffs, or neighbors similarly situated

who admitted that they contemplate similar actions against the defendants for recovery of damages.

On the other hand, eighteen witnesses, including the three defendants, testified in behalf of the defendant Workman. In reference to damage caused to the plaintiffs and others similarly situated by coal dust from the defendants' coal loading and crushing facilities, the testimony of these defense witnesses is in sharp conflict with that of plaintiffs and their witnesses. The general effect of the defense testimony is that testimony in behalf of plaintiffs relative to the coal dust is not warranted by the facts; that the dust from defendants' coal loading and crushing facilities is not abnormal in volume for a coal mining community such as Racine; and that the coal dust in the atmosphere in the Glenview Subdivision comes primarily from coal cars on the nearby railroad, coal trucks on the public roads and from nearby public highways and streets, particularly Indian Creek Road. This road is beyond the railroad tracks from the home of the plaintiffs, and passes under the defendants' loading tipple. Plaintiff Vergil E. Harless testified that the ramp is 159 feet from plaintiffs' front porch.

While there was much other testimony of a similar nature, the testimony of Porter Snodgrass, a deputy to the Sheriff of Boone County, was reasonably typical of defense testimony relative to the Indian Creek Road. A portion thereof was as follows:

"Well, from the bridge down past that coal ramp the dust is about three to four inches deep all over the road when it is a dry time. It just seems as if you would practically black out on the road the way the dust is. A lot of times I have got after an automobile and them old boys would drive out and get in that dust and dodge me. You couldn't tell which street they went in and they would hide from me. When you get to the first street that turns up the hill I would have to stop *they* would be so much dust. They would laugh at me — about getting away."

Roscoe Payne, another deputy sheriff, gave similar testimony.

In 1946, defendants Toney and Radcliff built an open ramp from which coal was dumped directly from trucks into railroad cars. Subsequently a tipple was constructed, equipped with a hopper or bin into which coal was dumped from trucks. Still later the coal crusher was installed in the bottom of the bin, and crushed coal was conveyed by a conveyor belt through an enclosed chute into railroad coal cars. Defendant Workman testified that the market for "mine run" coal became so limited that it was necessary to obtain a crusher to "size" the coal in order to obtain a market for it.

The defendant introduced testimony designed to show precautions taken and observed by him to minimize the dust problem. The crusher itself is covered by a "steel house". The hopper was constructed of sheet iron "surrounded by brattice cloth" to contain the dust. The chute through which the coal is conveyed to the railroad cars was enclosed. An open pit for stockpiling coal was discontinued. Calcium chloride was used in the summertime to control dust in and around the tipple. In 1956 a well was drilled nearby and soon thereafter Workman installed a spraying system consisting of four sprinklers. The pump and sprayer system were prescribed by and procured through F. L. Cross. Defendant Workman testified that "Mr. Cross is known throughout the coal industry as being an expert in their field of spraying * * *." The testimony indicates that the loading facility in question was installed and operated in a manner accepted generally in the industry; that the spraying equipment was not usual for such facilities, but was an added precaution against dust; and that no other loading tipples in the entire area have been equipped with similar spraying systems. Defendant Edward Toney testified that the sprayer system "is the method that is adopted and approved by the Department of Mines for the laying of dust."

Defendant Workman testified that his oral lease provided that he should pay Toney and Radcliff ten cents per ton for all coal loaded through the loading facilities covered by the lease; that he had coal property leased, though the coal was actually mined thereon by others on a contract basis; that there were from six to twenty of such operations by contractors; that such small scale mining operations are frequently referred to as "gopher holes" or "truck mining"; that from 75 to 150 men were employed in such small mining operations under contracts with Workman; and that additional coal was purchased by him from other small operators in the area and the coal thus purchased was likewise loaded at the same tipple.

Defendant Workman testified further that there was no other railroad siding in the vicinity; that there is no other suitable site for such a siding; that he and "the railroad" have "combed" the surrounding area many times in search of another suitable site for such coal loading facilities, but there is no other suitable site. He freely admits that there was dust in connection with the operation of the tipple; that there must be dust in connection with the operation of any such facility; but he contends that he exercised great care to hold the dust problem to a reasonable minimum. After detailing his various efforts to minimize the dust problem, he testified: "I don't know of anything else I could have done to improve the condition."

On the question of the degree or severity of the dust problem arising in Glenview Subdivision from the operation of the coal loading facilities, there is a very sharp conflict between the testimony in behalf of the plaintiffs and that in behalf of the defendant. There is a similar conflict in the testimony on the question of the degree of the dust problem created by the coal loading facilities, on the one hand, and by the railroad, coal trucks and public roads and streets on the other hand.

There can be no question about the fact that coal dust presents a problem for the plaintiffs in and about their home, as well as for others living in the community. On the other hand, the plaintiffs' problem in this respect is similar to that of others similarly situated. It appears from the evidence that Racine is a coal mining community, and that the economy of the community is dependent predominately on the coal mining industry. It is quite obvious from the testimony that a problem of coal dust to at least some degree is inevitable wherever coal is mined, processed, handled and transported. The situation, therefore, involves a balancing of the conflicting interests of the individual home owner on the one hand and of the basic, sustaining industry of the community on the other hand. This leads naturally to a discussion of pertinent principles of law pertaining to nuisances.

During the course of the trial, the plaintiff relied heavily on the case of *The Weaver Mercantile Co. v. Thurmond*, 68 W. Va. 530, 70 S. E. 126, 33 L.R.A. (N.S.) 1061. In that case it was held that: "A land owner who brings water upon his premises by artificial means and stores it in tanks or reservoirs for his use," is bound at his peril to prevent the escape thereof. The rule thus enunciated is known as "the doctrine of *Fletcher v. Rylands*", an early English case, which is specifically referred to in the *Thurmond* case. We are unable to perceive that such rule is a proper guide to the situation now under consideration. The case of *Mayes v. Union Carbide & Carbon Corporation*, 143 W. Va. 336, 101 S. E. 2d 864, 868, was based entirely upon negligence.

Previous decisions of this Court involving nuisances are exhaustively assembled and carefully treated in the majority opinion and in the dissenting opinion in the case of *Martin v. Williams*, 141 W. Va. 595, 93 S. E. 2d 835.

It has been said that the term "nuisance" is incapable of an exact and exhaustive definition which will fit all cases, because the controlling facts are seldom

alike, and each case stands on its own footing. The term is generally "applied to that class of wrongs which arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequent damage." 39 Am. Jur., Nuisances, Section 2, page 280. See also 66 C.J.S., Nuisances, Section 1, page 727. It is difficult at times to distinguish between actions based upon nuisances and those based on negligence. *Upp v. Darner,* 150 Iowa 403, 130 N.W. 409, 32 L.R.A. (N.S.) 743, Ann. Cas. 1912D 574. Acts or omissions constituting negligence frequently give rise also to a nuisance. 39 Am. Jr., Nuisances, Section 4, pages 282-283. See also *Spears v. Goldberg,* 122 W. Va. 514, 11 S. E. 2d 532.

Principles of law pertaining to nuisances are so variable in accordance with varied factual situations, and the field thereof is so extensive that it is difficult to state with any reasonable degree of succinctness the legal principles which have a pertinent bearing upon the present case. From the standpoint of clarity, and even brevity, perhaps this may be done best by the following rather extensive quotations:

"From the point of view of their nature, nuisances are sometimes classified as nuisances per se or at law, and nuisances per accidens or in fact. A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances in fact or per accidens are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property. The number of nuisances per se is necessarily limited, and by far the greater number of nuisances are nuisances per accidens. For this reason whether or not a particular thing or act is a nuisance is generally a question of fact, * * * to be determined in the first instance before the term 'nuisance' can be applied to it." 66 C.J.S., Nuisances, Section 3, pages 733 and 734.

"Since, * * * most nuisances are nuisances per accidens, as a general rule, the question of nuisance is one of degree, and usually turns on a question of fact, although it has been held that whether a nuisance exists raises a question which involves technical propositions of law and matters of public policy. No hard and fast rule controls the subject. Precedents drawn from other cases are usually of little value because of the differences in the facts and circumstances, and every case must stand on its own footing." 66 C.J.S., Nuisances, Section 8, pages 741-742.

"In general, a fair test as to whether a business lawful in itself, or a particular use of property, constitutes a nuisance is the reasonableness or unreasonableness of conducting the business or making use of the property complained of in the particular locality and in the manner and under the circumstances of the case; and ordinarily, where the use made of property or the conduct of a business is reasonable, no actionable nuisance is created as against which relief may be had. It has been held that in order to render one liable for a nuisance, the invasion of the interests of another must be either intentional and unreasonable, or, * * * actionable under the rules governing negligence, recklessness, or ultra-hazardous conduct; and it has been held that an intentional, as distinguished from negligent, invasion of another's interest in the use and enjoyment of land is unreasonable, unless the utility of the conduct outweighs the gravity of the harm.

\*    \*    \*    \*    \*    \*    \*

"If there are practical devices on the market which would lessen the annoyance complained of, the use of machinery without such devices might under certain circumstances be an unreasonable use so as to constitute a nuisance. On the other hand, if there are no such devices, the annoyance resulting from the use of the machine might be reasonable in the conduct of defendant's business under the particular circumstances." 66 C.J.S., Section 8, pages 744, 745.

"Commercial and industrial progress of the age may require modification of the common-law rules of nuisances. The time when a thing is done may be a circumstance to be considered." 66 C.J.S., Section 8, page 745.

"While an action for damages caused by an absolute nuisance is not controlled by the rules governing actions for negligence, in actions in which the nuisance is based on negligence, the rules applicable to negligence will be applied in so far as they may be pertinent to the facts disclosed. So, also, where the torts are coexisting and practically inseparable, as where the same acts or omissions constituting negligence give rise to a nuisance, the rules applicable to negligence will be applied. Where an act and condition can become a nuisance solely by reason of the negligent manner in which it is performed or permitted, there can be no recovery independently of the existence of negligence." 66 C.J.S., Section 11, Nuisances, page 754.

"* * * There are some nuisances in which the act complained of may be wrongful, but constitutes a nuisance only by reason of its location; and there may be an act or condition that is rightful, or even necessary, but may become a nuisance by reason of its location. What might be a nuisance in one locality might not be so in another; and, conversely, what might not be a nuisance in one place may become a nuisance in another. Thus, business which might be perfectly proper in a business or manufacturing neighborhood may be a nuisance when carried on in a residential district; and, conversely, a business which with its incidents might well be considered a nuisance in a residential portion of the city or village may not be subject to complaint when conducted in a business or manufacturing locality." 66 C.J.S., Nuisances, Section 13, pages 757-758.

"With respect to the law of nuisances, private convenience must often in our modern environment yield to public convenience and benefit." 66 C.J.S., Nuisances, Section 15, page 760.

"Dust blown from a person's land onto a neighbor's premises may be a nuisance if it is sufficient to cause perceptible injury to property or so pollutes the air as sensibly to impair its enjoyment. However, dust is not necessarily a nuisance. A reasonable amount of dust in a manufacturing community does not necessarily constitute a nuisance, even though it may cause some annoyance. Whether dust constitutes a nuisance is usually a question of fact." 66 C.J.S., Nuisances, Section 23b, page 777.

"Mining, when done in a lawful manner, is not a public nuisance. It is not classified as a nuisance in itself even though there may be some incidental annoyances accompanying its operation. By reason of attending or surrounding circumstances, however, mining may be or become a nuisance. * * *" 66 C.J.S., Nuisances, Section 75(3), page 822.

*Koch v. Eastern Gas & Fuel Associates,* 142 W. Va. 386, 95 S. E. 2d 822, and *Rinehart v. Stanley Coal Co.,* 112 W. Va. 82, 163 S. E. 766, were actions for damages caused by burning "gob piles." They were tried on the basis of negligence. The syllabus in the *Rinehart* case states: "An owner is liable for negligently using his property to the injury of another." An annotation dealing with the question of escape of harmful gases and fumes from coal mining and coal processing plants indicates that liability is generally based upon negligence. 54 A. L. R. 2d 784. Cases dealing with a "Coalyard as a Nuisance" are annotated in 8 A. L. R. 2d 419, wherein such business enterprises are said not to be nuisances *per se,* and relief to other landowners from the operation thereof is generally denied, when the location thereof is in an essentially industrial area. In connection with an exhaustive annotation of the subject of "Dust as Nuisance", the following general rule is stated in 24 A. L. R. 2d 202: "The location of a particular business is an important factor in determining whether the operation of such business, in which dust, dirt, and similar substances are thrown off, constitutes a nuisance in fact. The courts seem to recognize, whether expressly or not, that the theory behind this rule is that what may not be objectionable in a predominantly industrial neighborhood may constitute a nuisance per accidens when carried on in a residential area or similar community."

In the case of *Hacker v. Rader,* 309 Ky. 579, 218 S. W. 2d 404, the Court refused to enjoin the operation of a coal loading ramp on the ground of its being a nuisance, though the facts of that situation were peculiarly similar to those of the instant case. The case of *Harvey v. Susquehanna Coal Co.,* 201 Pa. 63,

50 A. 770, was identical with the instant case to the extent that plaintiff sued for damages resulting from dust from the operation of defendant's coal breaker or crusher. In holding that there could be no recovery in the absence of negligence, the Court stated: "The appellant has the right not only to mine its coal, but to prepare it for the market. In so preparing it by artificial means, volumes of dust necessarily arise, which, if not controlled, as far as possible, by proper appliances and the exercise of proper care, will be borne and scattered by the winds over and upon adjoining and near-by properties, and injuries to the same must result. If such injuries can be avoided by the most effective and approved means known of controlling coal dust, it is the duty of the appellant to adopt them." See also *Alexander v. Wilkes-Barre Anthracite Coal Co.*, 254 Pa. 1, 98 A. 794, and *Potter v. Consolidation Coal Co.*, 276 Ky. 404, 124 S. W. 2d 68.

The case of *Patterson v. Peabody Coal Co.*, 3 Ill. App., 2d 311, 122 N. E. 2d 48, involved an action for damages alleged to have been caused to the plaintiff's property by gas, smoke, dust, and fumes from the stack of defendant's coal drier and from a burning gob pile on defendant's land. The Court was faced with a determination whether liability should be predicated on nuisance or defendant's negligence, and stated (122 N. E. 2d, page 51):

"* * * The earliest cases proceeded upon the theory that an owner of property was entitled to pure and unadulterated air over his property. As we became more industrial and less pioneering and agricultural, courts were forced to recognize that industry could never develop or even live if exceptions were not made in the original hard and fast rule. The law thus developed that if industrial plants were located in places suitable to their business no action for nuisance would lie unless the interference with use of land was substantial and unreasonable or unless the defendant was causing more interference than was necessary in the proper conduct of his business. This latter alternative is commonly classified as negligence. Vol. 39 Am. Jur., Nuisances,

paragraphs 44 and 53; Vol. 66 C.J.S., Nuisances, Section 23.

"We have found no better treatise or guide on the subject of private nuisances than that contained in the Restatement of the Law on Torts, Chap. 40, Paragraphs 822 to 831 inclusive. Paragraph 822 states the general rule and outlines the elements necessary for recovery. Two of these elements are: (1) the invasion must be substantial and (2) the invasion must be either (a) intentional and unreasonable or (b) actionable under rules governing liability for negligence."

Plaintiffs' Instruction No. 6, which was granted and read to the jury, was as follows: "The Court instructs the jury that if you believe by a preponderance of the evidence that defendant negligently or deliberately permitted large volumes of coal dust to escape from his coal loading ramp and to be deposited upon plaintiffs' property thereby damaging their property, and causing them great inconvenience then your verdict may be for the plaintiffs." Defendant's Instruction No. B, which was granted and read to the jury, placed on the plaintiffs the burden of proving by a preponderance of the evidence that "the defendant is guilty of the negligence charged in the declaration." Defendant's Instruction No. F, which was granted and read to the jury, contained the following language relative to the right to recover: "Therefore, if you find from the evidence, facts and circumstances in this case that the injuries claimed to have been sustained by the plaintiffs have been trifling, and not substantial, and such as are necessarily incident to the business of loading coal, then you should find for the defendant." These three instructions disclose the basis upon which the trial court submitted the case to the jury.

We are mindful of the importance of the decision of this case to the parties thereto, as well as to others in similar situations throughout the State. We do not undertake herein a statement of well-defined legal principles which may be applied readily and easily to every similar situation which may arise hereafter.

To a considerable extent each case must be determined in accordance with its own peculiar facts. We do, however, believe, and, accordingly, the Court holds that in the circumstances of this particular case, the trial court did not err in submitting the case to the jury on the basis of principles relating to the law of negligence. The question of negligence or the absence thereof, depending for its determination upon conflicting testimony and the credibility of witnesses, was one peculiarly for the jury. *Prettyman v. Hopkins Motor Co.,* 139 W. Va. 711, 81 S. E. 2d 78.

From the case of *Martin v. Williams,* 141 W. Va. 595, 93 S. E. 2d 835, it is obvious that a business enterprise which is lawful and proper in one locality may be a nuisance in another locality. We have noted earlier herein that Glenview Subdivision of the Town of Racine is located in a coal mining community. From the testimony the trial court and the jury were warranted in finding that the defendant Workman exercised due care and observed reasonable precautions to minimize the problem of coal dust necessarily incident to the operation of his lawful business enterprise. Such business enterprise was not unlawful in itself, it did not constitute a nuisance *per se,* and the resultant injuries of which plaintiffs complain were not inflicted unlawfully, wilfully or wantonly. The business was not concerned with a substance or product inherently dangerous or deleterious to the health of human beings.

In the light of the Court's holding that the trial court did not err in submitting the case to the jury on the basis of negligence rather than nuisance, we deem it unnecessary to refer specifically to other assignments of error made on behalf of the plaintiffs.

For the reasons stated herein, the plaintiffs' motion to reverse is overruled and the judgment of the Circuit Court of Boone County is affirmed.

*Affirmed.*