# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2022 Term**

_____

No. 21-0610

_____

**FILED**

**June 8, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA, EX REL.,
SURNAIK HOLDINGS OF WV, LLC
Petitioner,**

**v.**

**HONORABLE THOMAS A. BEDELL,**
**sitting by assignment as Judge of the Circuit Court of Wood County;
and PAUL SNIDER,
Respondents.**

_____

**Petition for a Writ of Prohibition**

**WRIT DENIED**

_____

**Submitted: January 12, 2022**
**Filed: June 8, 2022**

| | |
|---|---|
| **Ryan McCune Donovan, Esq.** | **Alex McLaughlin, Esq.** |
| **J. Zak Ritchie, Esq.** | **John H. Skaggs, Esq.** |
| **Andrew C. Robey, Esq.** | **Calwell Luce diTrapano PLLC** |
| **Hissam Forman Donovan Ritchie** | **Charleston, West Virginia** |
| **PLLC** | **Counsel for Respondent Snider** |
| **Charleston, West Virginia** | |
| **Counsel for the Petitioner** | |

**CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.**

**JUSTICE ARMSTEAD concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.**

**JUSTICE BUNN did not participate.**

**SYLLABUS BY THE COURT**

1.      "A circuit court's failure to conduct a thorough analysis of the requirements for class certification pursuant to West Virginia Rules of Civil Procedure 23(a) and/or 23(b) amounts to clear error."  Syllabus Point 8, *State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020).

2.      "Before certifying a class under Rule 23 of the West Virginia Rules of Civil Procedure [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and has satisfied one of the three subdivisions of Rule 23(b).  As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party."  Syllabus Point 8, *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003).

3.      "When a class action certification is being sought pursuant to West Virginia Rule of Civil Procedure 23(b)(3), a class action may be certified only if the circuit court is satisfied, after a thorough analysis, that the predominance and superiority prerequisites of Rule 23(b)(3) have been satisfied.  The thorough analysis of the predominance requirement of West Virginia Rule of Civil Procedure 23(b)(3) includes (1) identifying the parties' claims and defenses and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions

i

predominate. In addition, circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. This analysis must be placed in the written record of the case by including it in the circuit court's order regarding class certification." Syllabus Point 7, *State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020).

4. "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

**HUTCHISON, Chief Justice**:

This is the second time this class action case, pursued under Rule 23 of the West Virginia Rules of Civil Procedure, has come to this Court on a petition for relief under our original jurisdiction. In our prior decision, we granted a writ of prohibition and dissolved the circuit court's former class certification order. *See State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020) ("*Surnaik I*").

The petitioner again seeks a writ of prohibition to stop the circuit court's most recent order certifying the case for class action relief. As we set forth below, we find no clear legal error in the order and deny the requested petition for a writ of prohibition.

## I. Factual and Procedural Background

In October of 2017, a week-long fire consumed a warehouse in Parkersburg, West Virginia, owned by the petitioner, Surnaik Holdings WV, LLC ("Surnaik"). The warehouse tenant at the time[1] was in the business of purchasing and recycling chemical waste and other byproducts from chemical manufacturers. The fire was massive, causing the county commission to declare it a disaster and the governor to declare a state of emergency. In just the first twelve hours, firefighters pumped six million gallons of water on the fire.

---

[1] The tenant was a company called "Intercontinental Export-Import, Inc.," and did business as "IEI Plastics." Respondents allege that several of Surnaik's members, officers, and directors also serve as officers and directors of IEI Plastics.

1

Respondent Paul Snider is a resident of Parkersburg. He alleges that the fire generated poisonous smoke filled with particulate matter and gasses that blanketed much of Parkersburg and the surrounding area. The respondent filed the instant action and, under Rule 23, sought to form a class action composed of all residents and businesses within an 8.5-mile radius of Surnaik's warehouse. The respondent's complaint (and later amended complaint) alleged that Surnaik had allowed the warehouse's fire protection system to fall into a state of disrepair. The respondent asserted causes of action for negligence and sought various forms of compensatory damages on behalf of himself and the putative class members including for diminution in the value of property, loss of use and enjoyment of property, lost profits of businesses, and personal injuries.

After the parties conducted discovery, the respondent filed a motion for class certification. The respondent proposed defining the putative class as containing individuals who lived in certain geographic areas (called "isopleths") surrounding the burned warehouse. Those isopleths met two conditions: beginning with the start of the warehouse fire, (1) there were concentrations of fine particles 2.5 micrometers or less in size ("PM2.5") that had been emitted by the fire; and (2) the fine particles averaged three micrograms per cubic meter ("3 ug/m$^3$") or more over any twenty-four-hour period during the fire. The respondent contended those amounts of fine particles are sufficient to at least cause irritation and inflammation in the nose, throat, and respiratory tract. An expert retained by the respondent outlined those isopleths on a map using air dispersion modeling techniques, data from the fire, and local meteorological data. Another expert calculated

that about 57,782 individuals resided within the isopleths. Surnaik opposed the respondent's motion for class certification.

In an order entered September 12, 2019, the circuit court granted the respondent's motion for class certification. The circuit court adopted respondent's definition of the class.

Surnaik then petitioned this Court for a writ of prohibition to halt the circuit court's September 2019 class certification order. After hearing oral argument by the parties, we granted the writ of prohibition on November 20, 2020. Overall, our opinion observed that "class certification determinations are not perfunctory" and that a "circuit court must give careful consideration" to whether a party seeking class certification has met the burdens imposed by Rule 23 of the West Virginia Rules of Civil Procedure. *Surnaik I*, 244 W. Va. at 256, 852 S.E.2d at 756. We stressed that a circuit court's analysis of a class certification motion must be "appropriate and thorough." *Id.* at 251, 852 S.E.2d at 751. We held, in Syllabus Point 8, that "[a] circuit court's failure to conduct a thorough analysis of the requirements for class certification pursuant to West Virginia Rules of Civil Procedure 23(a) and/or 23(b) amounts to clear error." *Id.* at 250, 852 S.E.2d at 750. Finally, we mentioned the rule applicable to all class certification questions:

> Before certifying a class under Rule 23 of the West Virginia Rules of Civil Procedure [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and has satisfied one of the three subdivisions of Rule 23(b). As long as these prerequisites to class certification are met, a case

3

should be allowed to proceed on behalf of the class proposed by the party.

Syl. pt. 8, *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003).

Our opinion noted that Surnaik raised five assignments of error to the circuit court's order. We distilled those five assignments down to an analysis of the two requirements imposed by Rule 23(b)(3), usually referred to as the "predominance" and "superiority" requirements. Rule 23(b)(3) provides that a party seeking class certification must show "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Regarding the predominance requirement, we adopted the following general guidelines in Syllabus Point 7:

> The thorough analysis of the predominance requirement of West Virginia Rule of Civil Procedure 23(b)(3) includes (1) identifying the parties' claims and defenses and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions predominate. In addition, circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. This analysis must be placed in the written record of the case by including it in the circuit court's order regarding class certification.

*Surnaik I*, 244 W. Va. at 250, 852 S.E.2d at 750, Syl. pt. 7 (in part). We then examined the discussion of predominance in the September 2019 certification order and concluded that "[t]he circuit court's analysis does not come close to rising to the level that is required." *Id.* at 262, 852 S.E.2d at 762. We found that the certification order did not properly detail the elements of the respondent's claims, did not assess whether there were common questions inherent in those claims, and only summarily concluded that overarching liability issues predominated over individual questions.

Regarding the superiority requirement, we noted that

[u]nder the superiority test, a trial court must "compare [ ] the class action with other potential methods of litigation." Cleckley, Davis, & Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 23(b)(3)[2][b], at 554 (footnote omitted). *See also Nolan v. Reliant Equity Investors, LLC*, No. 3:08-CV-62, 2009 WL 2461008, at *4 (N.D. W. Va. Aug. 10, 2009) ("Superiority requires that a class action be superior to other methods for the fair and efficient adjudication of the controversy." (quotations and citations omitted)); *In re West Virginia Rezulin Litig.*, 214 W. Va. at 75, 585 S.E.2d at 75 (stating that superiority "requirement focuses upon a comparison of available alternatives").

"Factors that have proven relevant in the superiority determination include the size of the class, anticipated recovery, fairness, efficiency, complexity of the issues and social concerns involved in the case." Cleckley, Davis, & Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 23(b)(3)[2][b], at 554 (footnote omitted). In addition, this Court has observed that consideration must be given to the purposes of Rule 23, "'including: conserving time, effort and expense; providing a forum for small claimants; and deterring illegal activities.'" *In re West Virginia Rezulin Litig.*, 214 W. Va. at 76, 585 S.E.2d at 76 (quoting 2 Conte & Newberg, *Newberg on Class Actions* § 4:32, at 277-78).

*Id.* at 263, 852 S.E.2d at 763 (quoting *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 527, 694 S.E.2d 815, 860 (2010)). We examined the circuit court's order and, while we found "more discussion" of superiority than we had found of predominance, we concluded that the circuit court's analysis was insufficient.

In *Surnaik I*, because of the circuit court's insufficient discussion of the predominance and superiority requirements of Rule 23(b), we granted the writ of prohibition. Accordingly, we vacated the circuit court's September 2019 order granting class certification.

When the case returned to the circuit court, the respondent renewed his bid to have the circuit court grant class certification to his case. The defendant again opposed class certification.

In an order signed June 15, 2021, the circuit court again granted class certification to the respondent's case. The circuit court gave the same definition to the members of the class, defining them by geographic isopleths exposed to certain amounts of smoke-borne particulates. The difference, however, was that the circuit court's order clearly contains the appropriate and thorough analysis of predominance and superiority required by our decision in *Surnaik I.* As to predominance, the order includes an element-by-element analysis of the respondent's claims (for nuisance and negligence), as well as Surnaik's affirmative defenses. The circuit court concluded that the duty and breach of duty elements for both claims centered on Surnaik's actions. The circuit court found these

two elements were not merely common, they were identical to all members of the class and, therefore, capable of class-wide proof. As to superiority, the circuit court found these two elements would require the most extensive discovery, document review, fact-witness depositions, expert testimony, preparation, and trial presentation. The circuit court balanced these class-wide questions with the individual questions, such as specific property or personal injury damages, and it found the class-wide questions were predominant and that a class action was the superior tool to resolve them.

Despite these findings, on July 30, 2021, petitioner Surnaik filed a second petition for a writ of prohibition with this Court. Surnaik's petition asserts it is challenging the circuit court's June 2021 certification order because it contains "the same flaws that plagued the first certification" order. We granted a rule to show cause to review the circuit court's order, and we allowed the parties oral argument.

## II. Standard of Review

Extraordinary remedies like the writ of prohibition should rarely be granted. "[W]e have clearly stated that extraordinary remedies are reserved for 'really extraordinary causes.'" *State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 40, 829 S.E.2d 35, 40 (2019) (quoting *State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 345, 480 S.E.2d 548, 554 (1996)). As we have explained, "a writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction

7

or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1." Syl. pt. 3, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

Surnaik argues that the circuit court exceeded its legitimate powers when it issued its class certification order. In Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996), we established our standard of review when such an allegation is made:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With this standard in mind, we examine Surnaik's arguments to assess, first and foremost, whether the certification order contains "clear error as a matter of law."

## III. Discussion

In its petition to this Court, Surnaik asserts six properly raised assignments of error.[2] Most of these assignments were previously raised in *Surnaik I.*

Surnaik's first, second, third, fifth, and sixth arguments are virtually identical to arguments made in *Surnaik I.* First, Surnaik "argues that the circuit court erred by certifying a class in which only 10% of the class is likely to have been injured, thereby failing to satisfy the predominance requirement of West Virginia Rule of Civil Procedure 23(b)(3)." *Surnaik I*, 244 W. Va. at 255-56, 852 S.E.2d at 755-56. Second and third, "Surnaik contends that mass accident and toxic tort matters, such as this one, are not appropriate for class adjudication," *id.* at 256, 852 S.E.2d at 756, and that federal courts refuse to certify similar personal injury claims. Surnaik insists that the certified class is fatally deficient because the number of uninjured individuals vastly exceeds the injured

---

[2] At the beginning of its petition, Surnaik identifies six "questions presented" by the circuit court's certification order. However, the argument section of Surnaik's petition contains a seventh assignment of error that is wholly unrelated to the certification order. It summarily contends that the circuit court erred, in an order dated November 7, 2018, in denying Surniak's motion to dismiss under Rule 12(b)(6). We find no merit to this seventh assignment of error and decline to consider it. *See* Syllabus Point 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) ("The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). *See also*, W. Va. R. App. Pro. Rule 10(c)(3) (requiring a brief to open "with a list of the assignments of error that are presented for review"); *Fairmont Tool, Inc. v. Davis*, 868 S.E.2d 737, 745 (W. Va. 2021) ("[A] clearly defined list of errors permits this Court to focus with clarity on the legal questions the petitioner alleges affected the lower tribunal's decision.").

and weeding out uninjured class members eviscerates any efficiencies gained through the class mechanism. Surnaik's fifth and sixth assignments mirror its third in *Surnaik I*, which was that a class cannot be certified "because [respondent] Mr. Snider conceded he did not suffer any property damage, [and] the requirements of standing and typicality preclude him from representing a class seeking that relief." *Id.*

We reject these five arguments because they misapprehend the circuit court's order. As defined by the circuit court, the class simply does not center upon those who are physically injured or suffered physical damage to property. Instead, the circuit court's order centers on geographic areas that were, due to Surnaik's alleged negligence, exposed to identified levels of smoke particles, and identifies class members as anyone who resided in homes or operated businesses in those areas. We have found the mere invasion of property by dust, smoke, or other noxious elements to be actionable. *See* Syl. pt. 1, *Harless v. Workman*, 145 W. Va. 266, 114 S.E.2d 548 (1960) (permitting recovery of "damages caused to the plaintiffs' property by dust resulting from the nearby operation by the defendant of a coal loading tipple and a coal crusher"); *Rinehart v. Stanley Coal Co.*, 112 W. Va. 82, 163 S.E. 766 (1932) (permitting recovery of damages for "noxious smoke, fumes, and dust from a burning refuse deposit on the leasehold of defendant"). At this early stage in the proceedings, the evidence supports the circuit court's threshold finding that all properties within the geographically designated isopleths, and any individuals within those properties, were exposed to levels of smoke particulates at levels sufficient to cause interference with the use and enjoyment of those properties. The respondent himself

10

testified his "house was full of smoke" and that he and his wife needed to wear masks just to relax in their home. Further, the circuit court concluded that there is evidence to make a case that enough smoke-borne particulate matter was spread across the Parkersburg area to increase the chance of physical injuries for a small percentage of people, and to cause some level of discomfort for a much larger percentage of people.[3] On this record, we find no error in the circuit court's conclusion that Surnaik's breach of any applicable duties owed to the individuals in the class-defined areas presents at least one common question that predominates over other questions and that the question merits class action resolution. We likewise find no error in the circuit court's determination that the respondent, who was deprived of the enjoyment of his home by transient smoke without his property being physically damaged, is a typical and proper representative of the class. *See* Syl. pt. 12, *In re W. Va. Rezulin Litig.*, 214 W. Va. at 57, 585 S.E.2d at 57 ("A representative party's claim or defense is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. Rule 23(a)(3) only requires that the class representatives' claims be

---

[3] The circuit court discussed the effects of "smoke and particulate matter of 3 ug/m$^3$ of PM2.5," finding that the evidence of record suggested "those levels of PM2.5 increase the risk of injury, resulting in death, asthma, heart attacks, and coronary artery thickening in a small percentage of persons subjected to them, and some level of discomfort in an unknown but much larger percentage of individuals." The circuit court concluded that it was up to the jury to "decide whether these levels of small particulate [exposure] . . . are sufficient to constitute an interference with the use of enjoyment of property, or whether higher levels" of exposure to smoke and particulate matter are required which would then "require a narrowing of the class boundary, thereby denying the claims for compensation of those outside the boundary."

typical of the other class members' claims, not that the claims be identical."). Accordingly, we reject Surnaik's first, second, third, fifth, and sixth assignments of error.

Surnaik's fourth assignment of error is identical to its fourth assignment of error in *Surnaik I*, that is, "Surnaik alleges that the circuit court erred by certifying a class whose members are not readily identifiable by reference to objective criteria." *Surnaik I*, 244 W. Va. at 256, 852 S.E.2d at 756. Surnaik argues that members must "be identified with sufficient specificity so that it is administratively feasible for the court to ascertain whether a particular individual is a member." Syl. pt. 3, in part, *State ex rel. Metro. Life Ins. Co. v. Starcher*, 196 W. Va. 519, 474 S.E.2d 186 (1996). Surnaik contends the circuit court's order lacked sufficient specificity to define the individuals within the class.

We reject this argument because the class is clearly defined by a geographical boundary. It is well-established that Rule 23 permits courts to certify classes defined by geography. *See*, *e.g.*, *Perrine*, 225 W. Va. at 502, 694 S.E.2d at 835 (certifying "a property-damage class of property owners in a five-by-seven mile area surrounding the smelter site, and a medical-monitoring class of approximately 8,500 people who had lived in the class area"); *Collins v. Olin Corp.*, 248 F.R.D. 95, 101 (D. Conn. 2008) ("Many courts have certified classes defined by geography, as the class here is defined by the contours of the Newhall neighborhood."). The court in *Cook v. Rockwell International Corporation*, 151 F.R.D. 378 (D. Colo. 1993) approved two classes (one for medical monitoring, another for property losses) defined geographically by lines ringing a weapon production facility that leaked plutonium. When defining a class, the *Cook* court said "the class does not have to

12

be so ascertainable that every potential member can be identified at the commencement of the action. If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist." *Id.* at 382 (cleaned up). Similarly, the court in *Boggs v. Divested Atomic Corporation*, 141 F.R.D. 58, 60–61 (S.D. Ohio 1991), approved a class defined "as all persons living within a six-mile radius of the boundaries of the Portsmouth Plant whose persons or property have been exposed to radioactive or hazardous wastes released from the plant." The court approved this class, in part, because "the class definition does not include the element of actual injury, only exposure." *Id.* at 64. Here, the circuit court order narrowed the class to individuals within geographically defined isopleths of potential exposure. Accordingly, we find no merit in Surnaik's fourth assignment of error.

## IV. Conclusion

After consideration of Surnaik's assignments of error, we find no clear error as a matter of law in the circuit court's June 2021 class certification order. Hence, we cannot say the lower tribunal exceeded its legitimate powers, and we must, therefore, deny the requested writ of prohibition.

Writ denied.