JOHN KOCH, *et al.*

v.

EASTERN GAS AND FUEL ASSOCIATES, *et al.*

(CC 833)

Submitted September 6, 1956. Decided December 22, 1956.

*Alfred R. Putnam, John L. McIntire, Tusca Morris, Robert M. Amos, A. Blake Billingslea,* for plaintiffs.

*James M. Guiher, Steptoe & Johnson, John D. Amos, Arthur A. Waltenbaugh,* for defendants.

*Jackson, Kelly, Holt & O'Farrell,* amicus curiae for the West Virginia Coal Assn.

RILEY, JUDGE:

The plaintiffs, John Koch and Olga Koch, instituted in the Circuit Court of Marion County their action of trespass on the case against Eastern Gas and Fuel Associates, a voluntary trust association, commonly known as a Massachusetts trust association, and validated in this jurisdiction by Chapter 47, Code, 1931, as last amended, by adding thereto a new article designated Article 9a, Sections 1 to 6, inclusive, Chapter 163, Acts of the Legislature, Regular Session, 1947, and Edward Shaw, superintendent of the coal mine and mining plant of the defendant trust association, to recover one hundred thousand dollars for damage to the premises of the plaintiffs, situate at or near "gob dumps" or "gob piles" on the premises of the defendant trust association, allegedly negligently operated by the defendants. The rulings of the court in sustaining plaintiffs' demurrer to defendants' special plea No. 2, which alleged that de-

fendants acquired rights by prescription, and defendants' special plea No. 3, which asserts that plaintiffs assumed the risk, were certified by the trial court to this Court. Specifically the certified questions are:

"(1) Were the defendants relieved of liability for the alleged wrongs set forth in the plaintiffs' declaration herein by reason of assumption of risk of such wrongs by the plaintiffs as alleged under the provisions of defendants' Special Plea No. 3?

"(2) Were the defendants relieved of liability for the alleged wrongs set forth in plaintiffs' declaration herein by reason of their acquisition and possession of a prescriptive right against plaintiffs and their lands as alleged in the provisions of defendants' Special Plea No. 2?"

In this Court counsel for both the plaintiffs and the defendants filed briefs and argued the case orally; and the West Virginia Coal Association, with prior leave of this Court, filed a brief as *amicus curiae* in support of the brief and position of Eastern Gas and Fuel Associates.

Plaintiffs' declaration in the first count thereof alleges that this case is based primarily upon actionable negligence in that the defendants, Eastern Gas and Fuel Associates and Edward Shaw, the trust association's superintendent, for many years prior to the institution of the action were the operators of a large coal mine and mining plant in connection therewith, located in and about Grant Town, Paw Paw District, Marion County, about one-half mile in a northwesterly direction from property, consisting of two parcels of land, conveyed to the plaintiffs by Frank W. Witt and wife, on May 19, 1943, and of record in the office of the Clerk of the County Court of Marion County, which is now owned and occupied by the plaintiffs. More specifically it is alleged in *verbatim* that: "* * * the defendants carelessly, negligently, willfully, wantonly and unlawfully piled, placed, threw and dumped, and caused permitted and suffered carelessly, negligently, willfully, wantonly and

unlawfully to be piled, placed, thrown, and dumped before and at the time of the committing of the wrongs, grievances and injuries herein complained of, and still carelessly, negligently, willfully, wantonly and unlawfully continue to pile, place, throw, dump and operate and caused, permitted and suffered to be piled, placed, thrown, dumped and operated on said surface lands of the defendant trust adjacent to and near to said tracts of land of the plaintiffs, large quantities, dumps and piles of refuse materials from said coal mine and mining plant therewith of said defendant trust, consisting of gob, bug dust, coal dust, slack coal, slag, slate, sulphur balls and other deleterious and chemical matters, which were and are highly combustible, and when they are ignited or allowed to burn, produce and emit gases, fumes, dust, smoke, acid, gases, chemicals and precipitates, which were and are injurious to and destructive of animal and vegetable life; and the defendants, at the time aforesaid and within five years from the bringing of this suit * * * negligently used and operated said 'gob dumps' or 'gob piles' located on said land of the defendant trust, thereby producing and emitting therefrom dangerous gases, acid gases, toxic gases, including sulphur dioxide gases detrimental to the public health and likewise to the health of the plaintiffs and tenants and other persons residing and living on said land of the plaintiffs."

In the second count of the declaration, in reference to the negligent operation of the gob piles, and the piling of refuse thereon, which bear pertinently on the question whether the instant action is properly an action of trespass on the case to recover temporary damages for continuing trespasses, it is alleged:

"The plaintiffs further aver that the defendants, many years prior to the institution of this action, when the plaintiffs were the owners of said land and the buildings, structures and improvements thereon, as aforesaid, were the operators of said large coal mine and the mining plant therewith, located on Big Paw Paw Creek, in and about Grant Town, in the District,

County and State as aforesaid averred, and that said coal mine and the mining plant therewith were situated about one mile in a southwesterly direction from said land of the plaintiffs; that in the operation of said coal mine and the mining plant therewith by the defendants, while the plaintiffs were the owners and occupiers of said land * * * and were the owners and occupiers of the buildings and other structures thereon, the defendants hauled, by means of trolley and large buckets or containers thereon, from said coal mine and mining plant therewith mine refuse materials, of slate, rock, shale, coal dust and slag and other articles of refuse, a part of which was and is highly combustible; that said refuse and materials after being extracted and hauled from said mine and mining plant therewith were and have been thence hitherto dumped and piled from day to day and night to night, and from time to time, in and on two large dumps or piles, commonly known as 'gob dumps' or 'gob piles', on the surface of the lands of the defendant trust at points at or near said coal mine and mining plant therewith, within and about said town of Grant Town, ***** and within about one-half mile of the land of the plaintiffs; and the plaintiffs further aver that it then and there became and was and has been hence hitherto the duty of the defendants to use reasonable care to keep and so operate said refuse materials dumped and piled in said 'gob dumps' or 'gob piles', as aforesaid, from becoming and remaining on fire and from generating and distributing large quantities of injurious and dangerous gases, fumes, dust, smoke, acid gases, chemicals and precipitates, all of which were and are injurious and destructive to said land of the plaintiffs, the soil thereon, vegetation thereon, fruit and fruit trees thereon, walnut and hickory and other trees thereon, and residences and other improvements thereon, and to said land for farming, agricultural and horticultural purposes; and also to use reasonable care to keep said gases, fumes, dust, smoke, acid gases, chemicals and precipitates from being carried by the atmosphere and air currents in, upon and against said land of the

plaintiffs and in, upon and against said soil thereon, trees thereon, including fruit trees, shrubbery, vegetation and other products raised on the plaintiffs' said land by farming, agricultural and horticultural work."

To plaintiffs' declaration, the defendants filed three special pleas, designated as special plea No. 1, special plea No. 2, and special plea No. 3; but, as the trial court sustained the demurrers to defendants' special pleas Nos. 2 and 3, and certified to this Court only its rulings in sustaining said demurrers, it is necessary for this Court to consider only those two special pleas.

Initially we note that though defendants' special plea No. 2 alleges rights by prescription, and defendants' special plea No. 3 alleges that the plaintiffs having acquired their property in the vicinity of the existing gob pile or piles, assumed the risk thereof, both pleas categorically deny any negligence on the part of the defendant trust in the operation of the gob pile or piles complained of in the declaration. In that regard both special pleas aver the general issue, as well as the specific matters of defense. In both special pleas Nos. 2 and 3 there is contained the averment: "That such piles became ignited and continued to burn through no fault or negligence on the part of the defendants; that such piles were lawfully used, operated and maintained." Thus both of the special pleas, to which the trial court sustained demurrers, violate the common law rule against duplicity in special pleas, which has been abrogated by Code, 56-4-39.

This case, because of the rather involved allegations of special pleas Nos. 2 and 3, is not without difficulty. However, initially we note that the plaintiffs' declaration is grounded upon the alleged negligent operation and maintenance of the defendants' gob piles. This appears from the allegations of the declaration itself. Though it is true, as held in *Richards* v. *Ohio River Railroad Co.*, 56 W. Va. 592, 49 S. E. 385, in which case a judgment for the plaintiff was affirmed by this Court in an action

instituted to recover damages for the negligent construction and maintenance of the railroad in front of plaintiffs' property, that a nuisance may result from negligence, the gravamen of the instant declaration, as defendants assert in their brief, "sounds in *negligence*"; and plaintiffs in their brief maintain that: "It is the theory of the plaintiffs that this case is essentially one of negligence. It is a *tort action* and is predicated upon the negligent operation of large gob piles, thereby causing to be emitted poisonous gases therefrom, including sulphur dioxide, and negligently to be carried therefrom and distributed by air currents upon and against the plaintiffs' land, and thereby injuring such lands and interfering with the private use and enjoyment thereof."

It is to be noted, however, as heretofore stated, that though the gravamen of defendants' special plea No. 2 is that the defendants now have "a prescriptive right to the maintenance of such burning gob pile, without liability for any damage or injury caused thereby to plaintiffs' property, or to any person or persons occupying or about the same, including especially the plaintiffs"; and that the gravamen of defendants' special plea No. 3 is that "the plaintiffs voluntarily assumed the risk of, and assented to, any and all damages or injury to their property, in any way caused by such burning gob pile; and that plaintiffs are not now entitled in this action to recover from the defendants for any such damages or injury to their property", both pleas traverse the allegations of negligence contained in the declaration, which is tantamount to incorporating in the pleas the general issue in the following language: "That such piles became ignited and continued to burn through no fault or negligence on the part of the defendants; * * *."

At common law this traversing or denial of negligence in both special pleas would render the pleas void because of duplicity. In Hogg's Pleading and Forms, Fourth Ed., Section 265, the third rule governing special pleas is stated to be: "(3) At common law it must not be double - it must not attempt to set up two distinct

matters of defense." Code, 56-4-39, provides: "The defendant in any action or suit may plead as many several matters, whether of law or fact, as he shall think necessary, except that if he plead the plea of non est factum he shall not, without leave of the court, be permitted to plead any other plea inconsistent therewith."

Literally interpreted this statute permits a defendant "in any action or suit" to "plead as many several matters, whether of law or fact, as he shall think necessary." See *Levy* v. *Scottish Union & National Insurance Co.*, 58 W. Va. 546, 550, 52 S. E. 449, 47 L.R.A. (N.S.) notes 346, 442.

This section of the Code does not expressly permit a defendant to assert in a single special plea two distinct defenses, and that is the rule stated in Burks Pleading and Practice, Fourth Ed., Section 218, in which that eminent author had under consideration both the Virginia and West Virginia statutes, which are somewhat alike, and said: "* * * Each defense must be set up by a separate and distinct plea, and if more than one defense is set up in a single plea, the plea is said to be double, and is objectionable on that account." However, Burks in Section 218 further said: "In West Virginia duplicity in a plea is no longer ground of demurrer or *objection* to it." (Italics supplied). The general rule set forth in Section 218 of Burks Pleading and Practice was the rule set forth in the earlier editions of Hogg's Pleadings and Forms.

Notwithstanding the provisions of the West Virginia statute, this Court has departed from the norm stated in Burks Pleading and Practice, Fourth Ed., Section 218, and such departure was stated in the footnote to Hogg's Pleading and Forms, Fourth Ed., Section 265, in the following language: "Hence the rule formulated in the original text is now obsolete with us, if the last expression of our court embodies the law relative to the matter." This Court stated in point 4 of the syllabus of *Hunt* v. *DiBacco*, 69 W. Va. 449, 71 S. E. 584, in which this Court

having before it a plea containing two grounds of defense, making it double within the common law rule as set fourth in the text in Hogg's Pleading and Forms, Fourth Ed., Section 265, and within the general statement contained in Burks Pleading and Practice, Fourth Ed., Section 218 held: "By virtue of statute in this state a defendant can plead several matters of defense, whether of law or fact, in the same plea. The common law objection for duplicity is thereby abolished." And, further, as stated in *Poling* v. *Maddox*, 41 W. Va. 779, pt. 8 syl., 24 S. E. 999: "Duplicity in a plea is no longer ground of demurrer or objection to it."

So this Court now has the choice of: (1) Applying the statute as it literally reads and overruling its holdings in the *Hunt* and *Poling* cases, and holding the pleas in the instant case demurrable because those holdings are not in conformity with the express provisions of Code, 56-4-39; or (2) holding that the allegations of the pleas traversing negligence on the part of defendants are mere surplusage, in which event, under the holding of this Court in *Horchler* v. *Van Zandt*, 120 W. Va. 452, pt. 2 syl., 199 S. E. 65, the allegations of the two pleas traversing negligence on the part of the defendants in the operation of their gob piles would not vitiate the pleas. In this latter regard, rather than overrule the holdings in the *Hunt* and *Poling* cases, and having in mind in particular that the allegations of the pleas denying negligence are not in the conventional form of a plea of the general issue and do not bear upon the gravamen of the two pleas, we are of opinion that the allegations traversing negligence in both pleas are mere surplusage, and do not serve to render the pleas demurrable on the ground of duplicity.

As the defect in the two pleas, in that there are inconsistent defenses in both pleas, is one of form, as distinguished from substance, which could only, in the absence of statute, be reached by special demurrers, and special demurrers have been abolished by Code, 56-4-36, they cannot be reached by the plaintiffs' demurrers, which, under the statute, are and must be general demurrers.

Code, 56-4-36, reads: "The sufficiency of any pleading, in law or equity, may be tested by a demurrer. Objections to the filing of any pleading, because of insufficiency are abolished. The form of a demurrer shall be: The defendant (or plaintiff) says that the declaration (or other pleading) is not sufficient in law, for the following reason (or reasons) : All demurrers in civil cases shall be in writing and shall state specifically the grounds of demurrer relied on, and no ground shall be considered other than those so stated, except by the court of its own accord, but the demurrant may, by leave of court, amend his demurrer by stating additional grounds, or otherwise, at any time before the trial at law or final hearing in equity. When a party demurs to any pleading, the demurrer shall at once be set for argument." *Farmers & Merchants Bank of Reedsville* v. *Kingwood National Bank,* 85 W. Va. 371, 101 S. E. 734, 19 A.L.R. 557, 568; *Napier* v. *Mozena Coal Co.,* 86 W. Va. 220, 103 S. E. 125; *McMechen* v. *Baltimore & Ohio Railroad Co.,* 90 W. Va. 21, 110 S. E. 474; *Meyn* v. *Dulaney-Miller Auto Co.,* 118 W. Va. 545, 191 S. E. 558. For a somewhat general review of the development of demurrers to pleadings in the common and statutory law of this State, see *Carroll* v. *Flanagan,* 135 W. Va. 234, 63 S. E. 2d 490; and for a scholarly discussion of the "Functions of a Demurrer under the Revised Code", that is Code, 1931, see the treatise by Professor Carlin, at that time Professor of Pleading and Practice at the College of Law of West Virginia University, 41 West Virginia Law Quarterly 313.

And, finally, bearing upon the question immediately under consideration, see the statement of this Court in the opinion written by Judge Brannon in the *Poling* case, in which it was stated: "And, now, under the abolition of special demurrers, by operation of Section 29, Chapter 125, Code, 1891 [West Virginia Code, 1931, 56-4-36], I do not think this objection of duplicity available to any pleading. *Coyle* v. *Railroad Co.,* 11 W. Va. 94; *Sweeney* v. *Baker,* 13 W. Va. 158, 201. Code, 1891, c. 125, s. 20; [now West Virginia Code, 1931, 56-4-39], changes the common-law by allowing several defenses in one action, and I see

no substantial objection to allowing them in one plea, as well as in separate ones."

For the foregoing reasons we are of opinion that the allegations of denial of negligence, set forth in the allegations contained in the two pleas, do not vitiate the special pleas.

This, of course, brings this Court to a consideration of special plea No. 2, in that it alleges that the plaintiffs are barred in this action on the ground of prescription; and special plea No. 3 that the plaintiffs assumed the risk when they moved into their property, as at that time defendants were operating their mine and had created the "gob dump" or "gob pile" complained of in the declaration.

The postulate upon which the plaintiffs, as disclosed by the allegations of the declaration, predicate their case has been succinctly stated by this Court in the syllabus of the case of *Rinehart* v. *Stanley Coal Co.*, 112 W. Va. 82, 163 S. E. 766, as follows: "An owner is liable for negligently using his property to the injury of another." In that case the plaintiffs brought their action to recover damages caused to their property by allegedly noxious smoke, fumes and dust from burning refuse deposited on defendant's leasehold. To a judgment of the Circuit Court of Preston County in favor of the plaintiffs, based upon a verdict of the jury, this Court granted a writ of error on the petition of the defendant coal company; but on writ of error here the judgment was affirmed. The record in the *Rinehart* case discloses that after a state division mine inspector, evidently at the instance of the president of the defendant coal company, inspected the mining operation and found that the gob pile heated " 'considerably, indicating spontaneous combustion,' " the defendant coal company attempted unsuccessfully to extinguish the flame with water, but continued to deposit thereon "bug dust" and other refuse until later another refuse dump or gob pile was started by the defendant near its tipple. Nothing more was done by the defendant coal company to stop the burning. In the *Rinehart* case

this Court said: The "Defendant, knowing the highly inflammable and combustible quality of the 'bug dust', was clearly negligent in depositing it with the other mining refuse in a huge dump covering several acres, as the machine cuttings, not sold as coal, could have been, and part of it was, deposited elsewhere". In the *Rinehart* case, as in the case at bar, it does not appear whether the alleged negligent operation of the gob pile constitutes a nuisance. In the case of *Day* v. *Louisville Coal & Coke Co.,* 60 W. Va. 27, 53 S. E. 776, a case in which the defendant coal company, mining coal and making coke, cast slag and refuse materials into or near a stream, so that they were carried by the waters of the stream and deposited on the land of a riparian owner, this Court affirmed a judgment for the plaintiffs, based upon a verdict of the jury. Judge Brannon on pages 28 and 29 of the opinion used the following apt and challenging language: "This case involves principles very important everywhere, but especially important in this State at present and in the future; but those principles are old and have been called into requisition through many, many years in actions for the pollution of streams, and casting into them hurtful things and depositing them upon lands of riparian owners on the stream below. The defendant contends that as it was using its property in carrying on a lawful business very useful to the public it is exempt from liability, as it was only exercising its rights. We are told by the able brief of the defendant's counsel that the affirmance of this judgment will be vastly hurtful and disastrous to the mining and coke interests of West Virginia, and have a tendency to detract from the value of our land, and hinder the development of the great wealth of coal and iron in the bowels of our mountains, and will be subversive of great public policy, which demands the development of our wealth therein, and tends to the weal of the whole people of the state, and that a few individuals injured thereby must be without redress. We cannot accede to this broad proposition. The established maxim of centuries is '*sic utere tuo ut alienum non laedas* (so use your own property that you do not injure another.)' That

rule is almost equal to the Golden Rule in importance, and must never be lost sight of in the daily doings and transactions of organized society. A man has land upon a stream. He is its sole lord. No one has a right to injure that land. It is protected by the Constitution. * * *"

True, in the *Rinehart* and *Day* cases the doctrine of assumption of risk and rights by prescription were not raised by the pleadings and the facts portrayed in the records in those cases.

In the recent case of *Oresta et al.* v. *Romano Bros., et al.,* 137 W. Va. 633, 73 S. E. 2d 622, this Court in point 1 of the syllabus held: "A person in possession of land is required so to use it as not to injure the property of another person." In the *Oresta* case, which involved an action of trespass on the case for damages for the placing by the defendants of rocks and other debris on plaintiff's land, as a result of strip mining operations, this Court affirmed the judgment of the Circuit Court of Mercer County in setting aside the verdict in favor of the plaintiffs, and granting defendants a new trial, solely on the ground that the injury or damage to plaintiffs' property was of a temporary nature, and that it was improper to admit evidence of the difference between the market value of the property immediately before and immediately after the injury, and because the verdict was clearly in excess of the amount which, under any competent evidence, were entitled to recover. Except that the *Oresta* case, which was tried in the trial court and in this Court on the theory that defendants' action in depositing debris on plaintiffs' land constituted a private nuisance, and the declaration in the instant action involves not the depositing of solid matters or refuse on plaintiffs' land, but the invasion of the enjoyment of plaintiffs' land, on which they live, by noxious gases blown by currents of air, the declarations in both cases are very much alike in that neither declaration alleges that the allegedly negligent acts on the part of the defendants constituted a private nuisance.

But as under the allegations of the declaration in the

instant case, the allegedly negligent operation of defendants' gob pile may constitute a nuisance, plaintiffs' declaration was drawn by its skillful draftsman on the theory of continuing trespasses, allegedly resulting in temporary damages.

We, therefore, in this case do not have the question of "coming to a nuisance", by reason of the action of the plaintiffs in acquiring their property in the vicinity of defendants' gob pile. The instant action being one of trespass on the case, as was the action in the *Oresta* case, and the damages claimed thereby being alleged to have been caused by a tort or torts committed by the defendant trust association within five years from the institution thereof, we think special plea No. 3 of the instant action, asserting plaintiffs' assumption of risk, was properly interposed to the declaration by the defendants' counsel, and that the trial court erred in sustaining a demurrer to that plea. Of course, as the allegations of the declaration in the case at bar are to the effect that the alleged wrongdoings on the part of the defendant trust association are progressive and continuing, the plea of assumption of risk cannot be employed to bar damages to the plaintiffs which have accrued since the plaintiffs moved into and on their property, and after the trust association had been notified or by the exercise of reasonable care should have known, of the injurious effects of its gob pile or gob piles.

Though this certified case is of wide public interest and importance in this State, it seems unnecessary for this Court to quote further in detail the averments contained in plaintiffs' declaration, which bear on the question whether the case at bar involves acts of continuing trespasses, which resulted in what may be termed "temporary damages", as distinguished from an action to recover temporary damages resulting from a private nuisance, such as was submitted to this Court in the case of *Oresta et al.* v. *Romano Bros., et al., supra,* on that basis. The instant declaration was drafted on the theory of continuing trespasses, resulting in temporary damages. Though the continuing trespasses alleged in the instant

declaration may, in fact, constitute a private nuisance, the case was not submitted to this Court on that theory. Whether the alleged continuing trespasses were, in fact, a nuisance, the cause of action did not arise until the injury had actually occurred. 2 Wood on Nuisances, 3rd Ed., §719. In the *Oresta* case this Court held that "A person in possession of realty is required to use it so as not to injure the property of another." While it is true that the declaration in the *Oresta* case, which charged the throwing of materials from a strip mining process on the plaintiffs' land, and the declaration in the instant case, as disclosed by the record, are almost identical, the case at bar under the averments of the instant declaration was drafted by lawyers skilled in the common law practice of this State, for the purpose of bringing this case within the category of an action of trespass on the case for the purpose of recovering damages for continuing trespasses, resulting in injury or damage, as distinguished from an action to recover temporary damages from a private nuisance.

This Court is well aware of its decision and opinion in the case of *The Board of Commissioners of the County of Ohio* v. *Elm Grove Mining Co.*, 122 W. Va. 442, 9 S. E. 2d 813, which was an equity suit by the Board of Commissioners of the County of Ohio against the mining company to enjoin a public nuisance, in which the Court entered a modified injunction decree based upon the postulate, as appears on page 451 of the West Virginia Reports that: "Notwithstanding a business be conducted in the regular manner, yet if in the operation thereof, it is shown by facts and circumstances to constitute a nuisance affecting public health 'no measure of necessity, usefulness or public benefit will protect it from the unflinching condemnation of the law.' 1 Wood on Nuisances, 3d Ed., Sec. 19. Consult: *Board of Health of Lyndhurst, Tp.* v. *United Cork Companies*, 116 N. J. Eq. 4, 172 A. 347; *Washington Cleaners & Dyers* v. *Albrecht*, 157 Md. 389, 146 A. 233; *State* v. *Service Cushion Tube Co.*, 316 Mo. 640, 291 S. W. 106."

While special plea No. 2, asserting a prescriptive right, alleges that the defendant trust association, or its predecessors in title "were visibly, openly, notoriously, and continuously" operating the gob pile, which was used and maintained by the defendants for a long period of years, to-wit, for more than ten years next preceding this action "under claim of right and without securing permission from the plaintiffs, all of which was with the full knowledge and assent of the plaintiffs"; the plea alleges nothing more than a permissive use, and such permissive use does not vest any prescriptive rights in favor of the defendants. As stated in the annotation to *Anneberg* v. *Kurtz*, 197 Ga. 188, 28 S. E. 2d 769, 152 A.L.R. 338: "In order to establish the prescriptive right to maintain a private nuisance, it is essential that the user upon which the prescription is based shall have been adverse to the person against whom the right is asserted. Stouts Mountain Coal & Coke Co. v. Ballard (1915) 195 Ala. 283, 70 So. 172; Lehigh Portland Cement Co. v. Campbell (1936) 27 Ala. App. 130, 166 So. 727; Smith v. Sedalia (1899) 152 Mo. 283, 53 S. W. 907, 48 L.R.A. 711; Bunten v. Chicago, R. I. & P. R. Co. (1892) 50 Mo. App. 414; City of Chillicothe v. Bryan (1903) 103 Mo. App. 409, 77 S. W. 465; Fansler v. Sedalia (1915) 189 Mo. App. 454, 176 S. W. 1102; Stremph v. Loethen (1918) Mo. App., 203 S. W. 238; North Point Consol. Irrig. Co. v. Utah & S. L. Canal Co. (1898) 16 Utah 246, 52 P. 168, 40 L.R.A. 851, 67 Am. St. Rep. 608."

As the instant action is one of trespass on the case to recover temporary damages for continuing trespasses, and the declaration complains of such trespasses as were committed within five years before the instituting of this action, defendants' special plea No. 2 does not effectively assert a prescriptive right. While special plea No. 2 alleges that "defendant's gob pile or mine refuse pile complained of in the declaration herein, or prior gob piles at substantially the same location, and being the same or substantially the same in form and effect, and in the character and extent of discharges and emissions therefrom", for a period of more than ten years, this

plea does not allege *when* "such piles became ignited and continued to burn". We are aware of the rule, as stated in 39 Am. Jur., Private Nuisances, Section 202, that: "In the case of nuisances that are purely private in character, prescription is generally recognized as a good defense." We, however, have before us only the consideration of the certified questions, one of which involves the sufficiency of the defendants' special plea No. 2. This plea, in our opinion, does not allege the elements of adverse and continuous user during the statutory period. If this case involved a permanent nuisance, as distinguished from one of continuous trespasses, we might have a different question before us.

Our attention has not been directed to, and we have found no case in the case law of either the Commonwealth of Virginia or this State, in which the defense of prescriptive rights has been asserted against the indirect, as distinguished from the direct, invasion of property rights. While it is unnecessary for this Court to decide and determine whether the matters contained in the declaration constitute a nuisance, we adopt the rule set forth in Wood on Nuisances, 3rd Ed., Vol. 2, which should prevail in this State, in the absence of any decision, and which is sound in a case like this which involves no actual trespass by defendants on plaintiffs' property, which rule is aptly stated in the following language: "The rule is, and it is important to be remembered, * * * that to constitute an adverse user requisite to sustain the right, it must be shown that the user had actually invaded the rights of the person against whom the claim is made, in reference to the particular matter which is the subject of complaint, and that the user, during the entire statutory period, and the invasion of the right, has produced an injury equal to, and of the character complained of, and of such a character and to such an extent that at any time during that period an action might have been maintained therefor."

In our opinion, defendants' special plea No. 2, asserting prescriptive rights, read in the light of the declara-

tion, is insufficient to meet the allegations of that declaration.

We therefore sustain the ruling of the Circuit Court of Marion County in sustaining the demurrer to defendants' special plea No. 2, and reverse the ruling of that court in sustaining plaintiffs' demurrer to defendants' special plea No. 3, and remand this case to that court for such proceedings as the parties hereto may be advised, not inconsistent with the principles herein enunciated.

*Rulings sustained in part*
*and reversed in part.*