Rosemary PATRICK, et al., Plaintiffs,

v.

SHARON STEEL CORPORATION, Defendant.

Civ. A. No. 81–0025–C(H).

United States District Court,
N.D. West Virginia,
Clarksburg Division.

Oct. 27, 1982.

Ray E. Ratliff, Jr., Kaufman & Ratliff, Charleston, W. Va., for plaintiffs.

Blair S. McMillin, Thomas R. Wright, Robert W. Thomson, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Alfred J. Lemley, Furbee, Amos, Webb & Critchfield, Fairmont, W. Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

### I. *Background*

This action was commenced by fifteen individual Plaintiffs to recover for damages they claim resulted from Sharon Steel Corporation's (Sharon) operation of its Fairmont Coke Works in Fairmont, West Virginia.[1] Plaintiffs allege that Sharon "willfully emitted into the ambient air large quantities of gaseous and solid pollutants which are both harmful and noxious."[2] Plaintiffs further assert that these pollutants had deleterious effects on Plaintiffs' health, and their real and personal property. The complaint also states that Sharon maintained refuse "ponds or dumps into which were discharged manufacturing by-products or refuse including, but not limited to, cyanide and other noxious and toxic compounds"[3] which have drained into the local water table and streams.

### II. *Jurisdiction*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Each of the Plaintiffs is a resident of West Virginia; the Defendant, Sharon Steel Corporation, is incorporated under the laws of Pennsylvania and has its principal place of business in Farrell, Pennsylvania.

### III. *Pending Motions*

Pending before the Court are numerous motions filed on behalf of both parties. Sharon has filed the following motions: (1) Motion to Dismiss for Lack of Jurisdictional Amount; (2) Motion for Summary Judgment Premised on Statute of Limitations; (3) Motion for Summary Judgment on Plaintiffs' Claims for Negligence, Private Nuisance, Trespass and Strict Liability; (4) Motion for Summary Judgment on Plaintiffs' Claims for Private Nuisance; and (5) Motion to Dismiss Action and Complaint of Olympia M. Davis. The Plaintiffs have filed the following motions: (1) Motion to Sever; (2) Motion for Judicial Notice; and (3) Motion to Reconsider Plaintiffs' Motion for Partial Summary Judgment. The Court will address these motions in the order in which they are listed above.

### IV. *Sharon Steel's Motions*

1. Motion to Dismiss for Lack of Jurisdictional Amount.

▬ Pursuant to 28 U.S.C. § 1332 the amount in controversy as to each Plaintiff must exceed $10,000.00 for this Court to have jurisdiction. Sharon moves this Court to dismiss this case on the basis that the requisite jurisdictional amount has not been met. The general rule governing this question is that the "sum claimed by the Plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) and cases cited therein; *see also, Gauldin v. Virginia Winn-Dixie, Inc.,* 370 F.2d 167, 170, n. 1 (4th Cir.1966). However, where a Plaintiff's allegations of jurisdictional facts are challenged, the Plaintiff must support them by competent proof. *McNutt v. General Motors Acceptance Corporation,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). To dismiss an action on this basis it "must

---

1. Plaintiffs' theories of liability include negligence, strict liability, nuisance and trespass.

2. Complaint at ¶ 8, p. 3.

3. Complaint at ¶ 10, pp. 3–4.

appear to a legal certainty that the claim is really less than the jurisdictional amount . . . ." *St. Paul Mercury, supra,* 303 U.S. at 289, 58 S.Ct. at 590, *quoted in Horton v. Liberty Mutual Insurance Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961).

■ The Court finds this argument of Sharon to be without merit. The Court notes initially that the *ad damnum,* though not controlling, requests the following compensatory damages [4] for each Plaintiff.[5]

| Plaintiffs | Damages |
| --- | --- |
| Rosemary Patrick | $ 90,000 |
| Charles Patrick | 50,000 |
| Janet L. Hylton | 50,000 |
| Larry K. Hylton | 50,000 |
| Betty Yoston | 75,000 |
| Anthony L. Iorio | 50,000 |
| Mary H. Iorio | 50,000 |
| Olympia M. Davis | 150,000 |
| Chandra Patrick | 90,000 |
| Candance D. Hylton | 50,000 |
| Heather M. Hylton | 50,000 |
| Allison L. Hylton | 50,000 |
| Jamie Yoston | 150,000 |
| Leslie Yoston | 50,000 |
| Paul C. Iorio | 100,000 |

Obviously, each of the amounts quoted above exceeds the $10,000.00 jurisdictional requirement. Moreover, considering the nature of the alleged wrongdoing as well as the types of damages claimed, the complaint appears to have been drafted in good faith as required by the Supreme Court's decision in *St. Paul Mercury, supra.*

To find that the requisite jurisdictional amount has been satisfied, however, the Court need not simply rely upon the good

4. The Plaintiffs also request $12,000,000 in exemplary damages. *See* Complaint at ¶ 35, p. 12.

5. *See* Complaint, Appendix A.

6. *See* Plaintiffs' Reply Memorandum in Opposition to Defendant's Motion to Dismiss for Lack of Jurisdictional Amount at p. 15.

7. The difference between "permanent" and "temporary" damages is explained in *Pickens v. Coal River Boom Co.,* 66 W.Va. 10, 17, 65 S.E. 865 (1909):
   "[t]he authorities agree that when the original act creating a nuisance to land is perma-

faith assertions in the complaint. The Plaintiffs have, in their reply memorandum opposing Sharon's motion to dismiss on this ground, summarized some of the specific damages incurred by each Plaintiff. It is not necessary to recount here the damages suffered by each of the fifteen Plaintiffs. A fair summary of these claims for damages is found in Plaintiffs' reply memorandum wherein they accuse Sharon of "polluting their air, diminishing the value of their real estate, damaging their houses and other personal property, ruining their soil, inhibiting the growth of their produce, endangering their lives and health and causing injury to their health, including permanent damage to eyes and respiratory and nervous systems, causing inconvenience, aggravation, loss of consortium and general annoyance and hardship to their lives." [6] Considering the complaint and Plaintiffs' memorandum supporting their elements of damages the Court finds that it does not "appear to a legal certainty that the claim is really less than the jurisdictional amount" and, therefore, denies Sharon's motion to dismiss on that basis.

2. Motion for Summary Judgment Premised on the Statute of Limitations.

■ Sharon argues that Plaintiffs' action is barred by the statute of limitations. Their argument proceeds along the following lines. Sharon's Fairmont Coke Works was a "permanent" structure and, as a consequence, any injury which the construction and operation of the coke works caused to the Plaintiffs is a permanent injury for which a single cause of action accrues.[7]

nent in nature, and is at once productive of all damage which can ever result from it, and that once destroys the estate for all practical purposes, so that when the act is completed all the damage that can be effected thereby is consummated, the entire damages must be recovered in one action, and the statute of limits begins to run against the cause of action from the time of the complete erection of the nuisance."
*Quoting St. Louis Ry. Co. v. Biggs,* 20 Am.St.R. 176. Damages are "temporary" if "they are continuous and repeated suits may be maintained as damage goes on . . . ." 66 W.Va. at 16, 65 S.E. 865.

Sharon further contends that because West Virginia would follow the "rule of injury"[8] rather than the "discovery rule"[9] in determining from what date the statute of limitations begins to run, the two year statute of limitations[10] bars Plaintiffs' action inasmuch as the injuries for which they seek recovery were incurred more than two years prior to the filing of their action.

In considering Sharon's motion the Court notes that under the doctrine enunciated in *Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) West Virginia law controls the question of when the statute of limitations began to run. In reviewing the relevant West Virginia law, the Court finds the above outlined argument of Sharon unpersuasive for two important reasons. First, there is ample basis to conclude that the "discovery rule" would be applied by West Virginia courts in determining the date the two year statute of limitation period commenced to run. The West Virginia Supreme Court of Appeals has adopted the discovery rule in cases involving subterranean coal mining,[11] medical malpractice[12] and legal malpractice.[13] Further, in *Pauley v. Combustion Engineering,* 528 F.Supp. 759 (S.D.W.Va.1981) the district court held, applying West Virginia law, that the West Virginia Supreme Court would extend the discovery rule to apply to a personal injury case based on a worker's contraction of asbestosis.

Sharon attacks the *Pauley* decision as "clearly improper" and contends that the federal courts in this state are bound to apply the rule of injury set forth by the West Virginia Supreme Court in *Scott v. Rinehart & Dennis Co.,* 116 W.Va. 319, 180

S.E. 276 (1935). This argument was addressed in the *Pauley* decision. Judge Staker reasoned that a federal court "is not immutably bound under *Erie* to follow the state court decisions if it appears that the highest state court would not rely on such precedent." *Pauley, supra,* at 761. In support of this position the Court in *Pauley* quoted *Calvert v. Katy Taxi, Inc.,* 413 F.2d 841 (2d Cir.1969):

> "[D]ue to the continuing development of, and ongoing changes in, today's concepts of legal liability, we, in determining the state law that we are to apply, cannot permit ourselves to be confined by state court decisional approaches if we have sound grounds to believe that the highest state court would in a case like ours adopt a different approach than the approaches in prior cases."

*Pauley, supra,* at 762. See also, *C.R. Fedrick, Inc. v. Borg-Warner Corporation,* 552 F.2d 852 (9th Cir.1977); *Hood v. Dun & Bradstreet, Inc.,* 486 F.2d 25 (5th Cir.1973) cert. denied 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1974); *Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832 (2d Cir.1967).

This Court agrees with the opinion expressed in *Pauley* that the *Erie* doctrine does not foreclose the federal court's capability to consider continuing developments in legal principles when determining questions of state law. In this regard, the Court concludes that the discovery rule would be applied by West Virginia courts in cases such as the one at bar. This conclusion is based on the West Virginia Supreme Court's reasoning that the discovery rule should be extended to cases when "such extension is designed to promote justice and right." *Family Savings and Loan, Inc. v.*

---

**8.** Under the "rule of injury" the statute of limitations begins to run from that precise point in time when an injury is sustained. *Scott v. Rinehart & Dennis Co.,* 116 W.Va. 319, 180 S.E. 276 (1935).

**9.** Under the "discovery rule" the statute of limitations does not begin to run until that date when the injured party discovers the injury or when by exercise of due diligence he should have discovered the injury. *Pauley v. Combustion Engineering,* 528 F.Supp. 759 (S.D.W.Va. 1981).

**10.** *W.Va.Code,* § 55–2–12.

**11.** *Petrelli v. West Virginia-Pittsburgh Coal Company,* 86 W.Va. 607, 104 S.E. 103 (1920).

**12.** *Morgan v. Grace Hospital, Inc.,* 149 W.Va. 783, 144 S.E.2d 156 (1965).

**13.** *Family Savings and Loan, Inc. v. Ciccarello,* 157 W.Va. 983, 207 S.E.2d 157 (1974).

*Ciccarello,* 157 W.Va. 983, 991, 207 S.E.2d 157, 162 (1974). The decision herein is also based on the statement by the West Virginia Supreme Court that "[i]t simply places an undue strain upon common sense, reality, logic and simple justice to say that a cause of action had 'accrued' to the plaintiff . . . until she had a reasonable basis for believing or reasonable means of ascertaining" that she had sustained an injury due to the negligence of another. *Morgan v. Grace Hospital, Inc.,* 149 W.Va. 783, 792, 144 S.E.2d 156, 161 (1965).

■ In applying the discovery rule to the present case it is clear that Sharon's motion for summary judgment premised on the statute of limitations must be denied. Pursuant to *Rule* 56 of the Federal Rules of Civil Procedure, summary judgment can be granted only where there is no genuine issue of material fact. *Bland v. Norfolk and Southern Railway Company,* 406 F.2d 863 (4th Cir.1969). Because there are many questions of fact to be decided in determining when the Plaintiffs to this action knew or should have known of their injuries, and the cause thereof, this is a matter within the province of the jury. *See Pauley, supra,* at 765.

The second reason Sharon's motion for summary judgment based on the statute of limitations must fail is that the West Virginia Supreme Court has recently ruled that "[w]here a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from the date of the last injury, or when the tortious overt acts cease." *Handley v. Town of Shinnston,* 289 S.E.2d 201 (W.Va.1982) *quoting* 54 C.J.S. Limitation of Action, § 169 (1948). Applying this principle to the case at bar, the Plaintiffs' cause of action accrued, and the statute of limitations began to run from the date of the last injury, May 31, 1981, the last day of operation of Sharon's Fairmont Coke Works. The complaint instituting this action was filed on May 22, 1979, which brings this action within the two year statute of limitations period.

Sharon argues that *Handley* is inapposite here because it involves damage of a temporary nature to real property while the present action is one for permanent damage to both, the Plaintiffs and their property. Neither of these suggested grounds used to distinguish *Handley* can withstand scrutiny. Sharon offers no reason, nor can the Court perceive one, why the continuous injury rule set forth in *Handley* should be applied only in property damage cases and not in personal injury actions. The Court finds the theory behind the rule to be equally applicable in both categories of cases. Where there is a repeated or continuous injury and where the damages do not occur all at once but increase as time progresses the tort is not completed, nor have all the damages been incurred, until the last injury is inflicted or the wrongdoing ceases. The instant case clearly merits the application of this doctrine. Many of the injuries of which the Plaintiffs complain accumulated over the period of years during which they were exposed to the coke plant's emissions. This activity of Sharon did not cease, nor had all of Plaintiffs' damages accrued until the coke plant was closed.

Sharon's attempt to distinguish *Handley* from the case at bar on the grounds that the present case involves a permanent damage as opposed to the temporary damage in *Handley* is also infirm. The distinction between temporary and permanent damages was an artifice fashioned to prevent a plaintiff from recovering successive permanent damages for injury to real estate. The West Virginia Supreme Court stated in *Keene v. City of Huntington,* 79 W.Va. 713, 724–725, 92 S.E. 119 (1917):

> "[W]here the injury to real estate is such as to affect its value permanently, permanent damages can be recovered for that injury; or, if the character of the agency, from the operation of which the injury arises, is such that it can reasonably be expected to continue for an indefinite time, and its operation in the ordinary and proper way produces the injury complained of, the plaintiff not only can, but he must, if he were to recover damages at all, sue and recover permanent damages. He can have but one suit for the purpose."

The major importance of the characterization of damages as either permanent or temporary lies in the measure of damages. If the damages to real estate are permanent the injured party can bring only one action to recover the diminution of the market value of the property. When the damages are temporary the plaintiff cannot recover this element of damages, but must bring successive suits to recover the damages as they are incurred. *Severt v. Beckley Coals, Inc.,* 153 W.Va. 600, 170 S.E.2d 577 (1969). The difference between temporary and permanent damages in this case is academic—because the Fairmont Coke Works is now closed there is no danger to Defendant that the Plaintiffs may recover permanent damages in this action and then sue Sharon for permanent damages in a subsequent case. In short, the motivating factor behind distinguishing between temporary and permanent damages, the prevention of a double recovery for permanent damages, is not present in this action. The Plaintiffs must recover for all their alleged injuries in this single action. As a consequence, the fact that *Handley* dealt with temporary damages and the present action is for permanent damages, has no bearing on the relevance of *Handley* to the case at bar.

The foregoing discussion of the discovery rule and the concept of a continuing tort does not obviate the need to reckon with the applicability of the two year statute of limitations. For there yet remains the problem of injuries that occurred, and for which damages accrued, prior to May 22, 1979. The *Handley* decision did not address this issue because in that case all the damages for which recovery were sought occurred within two years of the date on which the complaint was filed. *See Handley* at 202.

The authorities cited in *Handley,* however, do provide guidance on this matter. The court in *Handley* relied on language from 54 C.J.S. *Limitations of Actions,* § 169 to establish that in torts involving a continuing or repeated injury, the limitation begins to run from the date the injury ceases or when the last injury occurs. *Handley* at 202. That treatise goes on to state that a plaintiff is "not barred of a recovery for such damages as have accrued within the statutory period before the action ... *but the recovery is limited to such damages as accrued within the statutory period before the action.*" (emphasis added).

Another authority [14] cited by the court in *Handley* in its discussion of the running of the statute of limitations in continuing tort actions is *Pickens v. Coal River Boom & Timber Co.,* 58 W.Va. 11, 50 S.E. 872 (1905). *Pickens* involved an action against a defendant who had constructed a boom across a river on which plaintiff operated a grist mill. The boom, located downstream of plaintiff's mill, caused gravel, sand and mud to build up in the stream to such a level that it impeded the operation of the plaintiff's mill. The court, in discussing jury instructions that would have limited plaintiff's recovery to damages incurred within the five year statute of limitations, ruled that no error had been committed because the jury was correctly instructed that "there could be no recovery for damages done back five years before suit." *Id.* at 15, 50 S.E. 872.

---

**14.** The only other case cited by the court in *Handley* in that section of its opinion is *West Virginia Human Rights Commission v. United Transportation,* 280 S.E.2d 653 (1981). There the court was confronted with a question concerning the application of the 90 day statute of limitations of the West Virginia Human Rights Act. *United Transportation,* like *Handley,* also did not address the issue before this Court. In *United Transportation* the West Virginia Supreme Court of Appeals allowed recovery by seventeen plaintiffs even though the discriminatory act complained of took place more than ninety days before the complaint was filed. The court ruled that there had been a continuing violation of the Act inasmuch as plaintiffs had been "locked-in" to a lower status in the seniority system. The plaintiffs then were allowed to recover for *present* effects of discrimination that had occurred and continued to occur up until the date of the filing of the action. Therefore, this Court's holding that the Plaintiffs here cannot recover for injuries and damages that accrued prior to the allowed period is not inconsistent with *United Transportation.*

In a second appeal involving the same parties,[15] *Pickens v. Coal River Boom & Timber Co.,* 66 W.Va. 10, 65 S.E. 865 (1909), the West Virginia Supreme Court of Appeals reiterated its holding saying "[p]laintiff is not barred of a recovery for such damages as have accrued within the statutory period . . . ." *Id.* at 36, 65 S.E. 865. In the opinion of this Court, these authorities make it clear that the instant Plaintiffs cannot recover for injuries which accrued prior to May 22, 1979.

This holding must be read *in pari materia* with this Court's discussion regarding the discovery rule and the concept of a continuing injury. Obviously, any injury not discovered until May 22, 1979, is not barred by the statute of limitations. Nor is recovery barred for those *injuries* which were sustained prior to May 22, 1979, but for which *damages* did not accrue until after that date. Recovery is barred only for those discrete injuries and accompanying damages that occurred or were discovered beyond the statutory period, i.e., prior to May 22, 1979.

3. Motion for Summary Judgment on Plaintiff's Claims for Negligence, Private Nuisance, Trespass and Strict Liability.

▮ This motion is based on Sharon's contention that by operation of *W.Va.Code,* § 55–2–1 that it has obtained a prescriptive easement over the Plaintiffs' lands and other property rights. That Code section provides:

"No person shall make an entry on, or bring an action to recover, any land, but within ten years next after the time at which the right to make such entry or to bring such action shall have first accrued to himself or to some person to whom he claims."

In support of its motion Sharon states that it has operated the Fairmont Coke Works continuously, actually, openly, exclusively, adversely and under claim of right from 1948 to 1979.

There are several reasons why this motion for summary judgment must fail. First, as the Court's discussion above indicates, Sharon has not established that the statutory period of ten years has elapsed since the Plaintiffs' right to bring this action has accrued. Second, to obtain such an easement it must appear by clear and convincing proof that Sharon has established all the elements of a prescriptive use, including the fact that the use relied upon is adverse. *Fanti v. Welsh,* 152 W.Va. 233, 161 S.E.2d 501 (1968) (syllabus point 2). In reviewing the material submitted to it by Sharon in support of its motion for summary judgment, the Court finds that Sharon has not clearly and convincingly proved its use to be adverse. *See Koch v. Eastern Gas and Fuel Associates,* 142 W.Va. 386, 402, 95 S.E.2d 822 (1956) (Under facts similar to those here, the court found the use to be merely permissive and not adverse).

Third, the Court believes that under West Virginia law a prescriptive easement would not be permitted in a case such as this. It should first be noted that there are no West Virginia cases allowing a prescriptive easement defense against an action for negligence; trespass or nuisance. The case Sharon relies on as recognizing such a defense, *Koch v. Eastern Gas and Fuel, supra,* merely states that in "the absence of any decision the court would adopt the elements of a prescriptive easement as set forth in Wood on Nuisances." *Id.* at 403, 95 S.E.2d at 832. The West Virginia Supreme Court recently addressed this issue in *Sticklen v. Kittle,* 287 S.E.2d 148 (W.Va.1981). In *Sticklin* the court held that an "avigation easement in the airspace used by aircraft over land adjacent to an airport cannot be acquired by prescription." *Id.* at 155. Inasmuch as the party seeking the easement in *Sticklin* asserted the same type of argument (and based it on the same statute, § 55–2–1) as urged by Sharon in this case, the Court finds it extremely doubtful that

**15.** Apparently Mr. Pickens and the Coal River Boom & Timber Company were not the friendliest of neighbors. In addition to the two actions discussed in the text, the case reports reveal a third appellate action by these litigants, *Pickens v. Coal River Boom & Timber Co.,* 51 W.Va. 445, 41 S.E. 400 (1902).

the West Virginia Supreme Court would permit a party to obtain a prescriptive easement in a case such as this.

Moreover, in determining whether state law would permit a prescriptive easement under these facts, this Court must consider, as the West Virginia Supreme Court would, the effect of such a ruling. This consideration is especially important in this case because of the totally unacceptable result that would obtain if a prescriptive easement were found to exist herein. Sharon's emissions were subject to both the West Virginia Air Pollution Control Commission and the Federal Clean Air Act. Sharon has admitted that the emissions from its Fairmont Coke Works exceeded the limits set by the West Virginia Air Pollution Control Commission.[16] The effect, then, of allowing Sharon a prescriptive easement over Plaintiffs' land would be to hold that because its emissions exceeded the State regulations to such a large degree, and the accompanying invasion of surrounding property was so complete, Sharon is now immune from civil liability resulting from its unlawful emissions. This Court believes that the West Virginia Supreme Court would recognize this result as being completely foreign to justice and contrary to all principles of fairness and common sense.

4. Motion for Summary Judgment on Plaintiffs' Claims for Private Nuisance.

In moving for summary judgment on Plaintiffs' claims for a private nuisance, Sharon argues that the doctrine of "coming to the nuisance" bars any recovery by Plaintiffs. *See Oetjen v. Goff Kirby Company,* 49 N.E.2d 95 (Ohio App.1942). This assertion is premised on the fact that the coke works was in operation when Plaintiffs moved into their residences near the coke works and, therefore, Plaintiffs assumed the risk of living near the nuisance.

This argument is untenable. Sharon relies upon an outdated doctrine that has never been recognized in West Virginia and which has been rejected by the majority of jurisdictions in which it had been previously adopted. The only West Virginia case to discuss this doctrine is *Richards v. Ohio River Railroad Co.,* 56 W.Va. 592, 49 S.E. 385 (1904). Though the defense of coming to the nuisance was not raised in that case the court nevertheless discussed the issue and flatly rejected it saying "[i]f one comes to a nuisance, that does not debar him in legal proceedings for harm from it, or to restrain it." 56 W.Va. at 593, 49 S.E. 385. Though this statement is technically *dictum,* this Court believes West Virginia courts would follow it inasmuch as it represents the modern view. *See Restatement 2d Torts* § 840(d); Prosser, *Law of Torts,* § 91 (4th Ed.1971). As the Supreme Court of Florida stated in *Lawrence v. Eastern Airlines, Inc.,* 81 So.2d 632, 634 (Fla.1955):

> "The majority view rejects the doctrine of coming to the nuisance as an absolute defense to a nuisance action. Support for the majority view is found in the argument that the doctrine is out of place in modern society where people often have no real choices as to whether or not they will reside in an area adulterated by air pollution. In addition, the doctrine is contrary to public policy in the sense that it permits a defendant to condemn surrounding land to endure a perpetual nuisance simply because he was in the area first. Another reason given for rejecting the doctrine is that the owner of land subject to a nuisance will either have to bring suit before selling his land in order to attempt to receive the full value of the land or reconcile himself to accepting a depreciated price for the land since no purchaser would be willing to pay full value for land subject to a nuisance against which he is barred from bringing an action."

Jurisdictions as near to West Virginia as Kentucky[17] and as distant as the United

---

16. *See* Consent Order dated March 3, 1979, quoted in Plaintiffs' Memo of Law Re:. Negligence, Private Nuisance, Trespass and Strict Liability, at page 5.

17. *J.C. Currey v. Farmer's Livestock Market,* 343 S.W.2d 134 (Ky.1961).

Kingdom [18] have rejected the doctrine of coming to the nuisance as a defense. Considering the ample authority on this point, the Court believes West Virginia would follow the majority view, and *Richards* in disallowing this anachronistic doctrine to serve as a defense in nuisance cases.

5.  Motion to Dismiss Action and Complaint of Olympia M. Davis.

■ This motion is made pursuant to *Rule* 25(a)(1) of the Federal Rules of Civil Procedure. That rule provides that when a party to an action dies "[u]nless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided here and for the service of the motion, the action shall be dismissed as to the deceased party."

Olympia Davis died in December of 1981.[19] On February 3, 1982, Sharon filed upon the record a formal suggestion of death and served notice of same to all parties to this action. No motion for substitution has yet been received by this Court. Under these circumstances the operation of the rule is clear—the complaint and action of Olympia M. Davis must be dismissed. *See Johns Hopkins University v. Hutton,* 297 F.Supp. 1165 (D.Md.1968) *affirmed in part and reversed on other grounds,* 422 F.2d 1124 (4th Cir.1970).

### V. *Plaintiffs' Motions*

1.  Motion to Sever.

■ The Court has before it a rather novel motion by Plaintiffs to sever the trial of this action. Plaintiffs suggest that the Court select two of the families of Plaintiffs and sever their trial from the remaining Plaintiffs. Plaintiffs reason that this mechanism will simplify the many issues for the jury, prevent repetitive presentation of evidence and promote judicial economy. According to their proposal "[i]f the jury returns a verdict for the Defendant in the trial of the two families of Plaintiffs then the remaining untried Plaintiffs agree to be bound by that verdict and there will be no further proceedings. If, on the other hand, there is a verdict for the Plaintiffs, then the Defendant would be collaterally estopped from denying liability." [20]

*Rule* 42(b) of the Federal Rules of Civil Procedure does provide for separate trials "to avoid prejudice, or when separate trials will be conducive to expedition and economy." The decision to grant separate trials is within the discretion of the Court. *Bowie v. Sorrell,* 209 F.2d 49 (4th Cir.1953); *Bedser v. Horton Motor Lines,* 122 F.2d 406 (4th Cir.1941). The complicating issue here is that Plaintiffs simply are not asking for separate trials; rather they are requesting that both parties be bound by the doctrine of collateral estoppel to the result of the first trial. There is no authority, however, to support the view that the parties would be collaterally estopped in such a manner. The use of the test case approach here would be clearly improper. Establishing the liability of Sharon to each of the individual Plaintiffs must involve a consideration by the jury of circumstances and factors of causation peculiar to each Plaintiff. Sharon has the right to insist that each Plaintiff prove the merits of his claim as to liability and damages and, therefore, cannot be bound by the result obtained in a prior test case.

The Court also finds that no real benefit would be gained by a severance. Neither the number of issues involved nor the number of witnesses required to be called to prove liability would be reduced. The simplest, most efficient and least time consuming procedure would be to conduct one trial in which all the Plaintiffs would present all their claims. This is the course the Court intends to follow.

2.  Motion for Judicial Notice.

■ The Plaintiffs have supplied the Court with a list of chemical compounds

---

**18.** *London, Blighton and South Coast Railway v. Truman,* 11 App.Cas. 45 (P.C. 1885).

**19.** The cause of death was not related to this action.

**20.** Plaintiffs' Memorandum in Support of Motion to Sever at p. 2.

which they allege were used, produced as products or by-products or were emitted as waste by Sharon's Fairmont Coke Works. Plaintiffs request the Court to take judicial notice of the "dangerous properties" of these substances. *Rule* 201(b), Federal Rules of Evidence (FRE) permits a court to judicially notice a fact that is not reasonably disputed in that it is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Because the chemical properties of such compounds as benzopyrene, antracene, sodium phenolate, or ammonium sulfate are certainly not "generally known" within the territorial district of this, or any other Court, there can be no question that subsection (1) above is inapplicable. It also appears that the Court may not take judicial notice of these "facts" under subsection (2) of *Rule* 201(b), FRE. Sharon, in its reply memorandum, has raised reasonable questions as to the accuracy of the sources relied upon by the Plaintiffs in their motion for judicial notice. Among these are allegations that the authorities cited by Plaintiffs do not contain the statements that Plaintiffs attribute to them. These contentions are sufficient to show that the "facts" which Plaintiffs desire the Court to notice judicially are reasonably disputed and that in exercising the "great caution" [21] required in this matter, the Court must deny Plaintiffs' motion.

The Court also notes that of the twenty-one compounds listed by Plaintiffs several are quite common and not generally considered to be dangerous. These include copper, lead, nickel and carbon dioxide. While the Court does not doubt that under certain conditions these compounds could be dangerous, it is incumbent upon the Plaintiffs to prove the existence of those "certain conditions" or exposure levels. These matters should be decided by a jury after full development of the evidence at trial, not by a Court on a motion for judicial notice.

3. Motion to Reconsider Plaintiffs' Motion for Summary Judgment.

Plaintiffs have renewed their motion for partial summary judgment on the issue of strict liability in conjunction with the above discussed motion for judicial notice. Pursuant to the Court's refusal to judicially notice the "facts" suggested by Plaintiffs in reference to the by-products and emissions of Sharon's coke works, there is absolutely no evidence in the record to support a finding that coke ovens are abnormally dangerous. Therefore, Plaintiffs' motion to reconsider their motion for partial summary judgment is denied.

## VI. ORDER

For the reasons discussed above, the Court hereby

1. DENIES the Defendant's Motion to Dismiss for Lack of Jurisdictional Amount;

2. DENIES in part and GRANTS in part Defendant's Motion for Summary Judgment Premised on Statute of Limitations;

3. DENIES Defendant's Motion for Summary Judgment on Plaintiffs' Claims for Negligence, Private Nuisance, Trespass and Strict Liability;

4. DENIES Defendant's Motion for Summary Judgment on Plaintiffs' Claims for Private Nuisance;

5. GRANTS Defendant's Motion to Dismiss the Action and Complaint of Olympia M. Davis;

6. DENIES Plaintiffs' Motion to Sever;

7. DENIES Plaintiffs' Motion for Judicial Notice; and

8. DENIES Plaintiffs' Motion to Reconsider Plaintiffs' Motion for Partial Summary Judgment.

**21.** *Makos v. Prince,* 64 So.2d 670, 673 (Fla. 1953).